BIJUR MOTOR LIGHTING CO. v. ECLIPSE MACH. CO. et al.

(Circuit Court of Appeals, Second Circuit. June 11, 1917.)

No. 247.

1. APPEAL AND ERROR ☞1009(1)—REVIEW—FINDINGS OF FACT ON ORAL TESTIMONY.

The difference between spoken word and printed page is something that rightly gives to a decree following open trial and dealing with facts a weight not easily overstated.

2. CONTRACTS ☞147(1)—RESCISSION—GROUNDS.

When persons, natural or artificial, use words in contract making falling short of or going beyond intention, they must abide by the result of their efforts, unless a new agreement supersede the failure, mutual mistake of fact be shown, or fraud be established.

3. EVIDENCE ☞462—PAROL EVIDENCE.

That a written contract is merely one to make a contract subsequently must appear from the contract made, and cannot be shown by parol.

4. CONTRACTS ☞165—ORAL AGREEMENTS COLLATERAL TO WRITTEN CONTRACTS.

A parol agreement, made contemporaneously with a written contract, to be enforceable must be in respect of a matter distinct from that covered by the writing.

5. CORPORATIONS ☞399(4)—REPRESENTATION BY OFFICERS—VALIDITY OF CONTRACT.

The officers of a corporation are its agents, and if they act within their actual authority, or even within the apparent scope thereof, in making a contract, the corporation will be bound.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. PATENTS ⊜209(1)—CONTRACT TO GRANT LICENSE—VALIDITY.

A written agreement, executed on behalf of complainant corporation in the office of its counsel, after repeated negotiations between the parties, by which it contracted to grant a license to defendant under a patent, *held* valid and binding and to entitle defendant to a specific performance.

Appeal from the District Court of the United States for the Western District of New York.

Suit in equity by the Bijur Motor Lighting Company against the Eclipse Machine Company and Vincent Bendix. Decree for defendants on original bill and for defendant Bendix on counterclaim, and complainant appeals. Affirmed.

For opinion below, see 237 Fed. 89.

The plaintiff (hereinafter called "Bijur Company") owns the patent described in the document below given, covering an invention of Joseph Bijur, its president. The bill alleged in usual form infringement by the defendants, who, admitting in substance that they were using Bijur's invention, asserted a right so to do as licensees, and (by counterclaim) demanded that plaintiff be required specifically to perform the contract under which they justified and denied (as a conclusion of law) the infringement asserted.

This alleged contract, which sufficiently defines the relation of parties contended for by defendants, is as follows:

"Memorandum of Agreement Reached July 9, 1914, Between Bijur Motor Lighting Company and Vincent Bendix.

"First. Mr. Bendix is to receive a license under the Bijur patent, No. 1,095,-696, for the life of the patent, and for the manufacture, use and sale of starters involving a screw shaft.

"Second. This license is to be exclusive as against all parties save Bijur Motor Lighting Company.

"Third. This agreement is to be binding upon the heirs and successors of both parties, and upon the assignees of the whole business of each party, and is to convey to Mr. Bendix the right to sublicense the Eclipse Machine Company, its heirs. successors and assigns of its business.

"Fourth. Mr. Bendix is to pay a royalty of five hundred dollars ($500) a year.

"Fifth. Mr. Bendix is to grant the Bijur Motor Lighting Company an exclusive license under each of his foreign patents or applications on starting apparatus for the life of the prospective foreign patents or applications.

"Sixth. The foreign rights under the Bendix foreign patents are in no way to interfere with the rights of export and use in foreign countries of all apparatus built in accordance with the license to Mr. Bendix under the Bijur patent in this country.

"Seventh. The rights of Mr. Bendix under this agreement and those of his licensee shall extend to the manufacture in Canada, as well as its use and sale.

"Eighth. Mr. Bendix agrees, without further consideration, either to secure a certain United States application now pending in the Patent Office and alleged to interfere with the Bijur patent, and guarantee that it be conducted and handled throughout in a manner satisfactory to the Bijur Motor Lighting Company, or, failing in this, that he will, at his own expense, vigorously prosecute the parties owning or controlling such application, or the resultant patent, to his full ability, under any rights which he may possess.

"Ninth. Mr. Bendix and the Eclipse Machine Company agree to mark the goods licensed under this agreement, 'Licensed Under Patent No. 1,095,696,' or equivalent words.

"Tenth. As against infringers of the Bijur patent, building screw shaft starting apparatus, Mr. Bendix is to bear the expense of legal proceedings, and as against other infringers of said patent, Bijur Motor Lighting Company is to bear the expense of legal proceedings.

"Eleventh. Mr. Bendix is to furnish the wording of the broadest claim which has been allowed in his German application, and warrant that it has been allowed, and also the effective filing date of the German case.

"Twelfth. Mr. Bendix agrees that the licensee (the Eclipse Machine Company) will, in consideration of the granting of this license by the Bijur Motor Lighting Company, give an additional discount of five per cent. (5%) off from the best price named to any other motor and lighting company, and that he will also obtain the best of deliveries and prompt service.

"In witness whereof, we have hereunto set our hand and affixed our seals this 9th day of July, 1914, the Bijur Motor Lighting Company by its proper officer thereunto duly authorized.          Bijur Motor Lighting Company,          .
                                        "By Walter C. Allen.    [L. S.]
                                        "Vincent Bendix.       [L. S.]"

The foregoing is typewritten, except signatures of Allen and Bendix, which are admittedly genuine.

Plaintiff replied, in effect, that this paper was never intended to be a contract; was nothing but a tentative scheme for a business arrangement, of which the fruition was to depend on Bendix proving a scope and value in his German patent which it was never shown to possess; and that the appearance of contractual finality exhibited by the document in question resulted from fraud on the part of Bendix.

The District Judge, after a trial in which all the actors were examined in open court, held that defendant's position was justified by the evidence, dismissed the bill on the ground that Bendix was, and had been since the date of agreement, entitled to a formal license, with authority to sublicense the Eclipse Company, and on the counterclaim decreed that such license be given within 60 days. Plaintiff took this appeal.

Bijur is an inventor, with considerable experience in management and exploitation of patents. He entirely controlled the Bijur Company, not so much by stock ownership as by his personality and the fact that the company existed largely, if not wholly, in the hope of profiting by his inventions. He had several times made contracts for and in the name of his company, without consulting his board of directors. Allen is a relative of Bijur's, a stockholder in the Bijur Company, and an employé, with wide but not very accurately defined duties.

While the application for Bijur's patent was in the office, Bendix filed an application of his own, covering matter sufficiently close to Bijur to give rise to an interference if demanded. Nevertheless "by inadvertence," as the examiner stated, Bijur's patent issued without notice to Bendix, or knowledge thereof on the part of the latter. Thereupon the commissioner advised both parties of the facts, and suggested steps still open to Bendix if he wished to contest. Pending his application Bendix had agreed to license Eclipse Company under his expected patent. Dunn is president of that corporation, and he, as financier for Bendix, preferred some settlement with Bijur to litigation in Patent Office or court.

Bijur had no patent in Germany; Bendix had applied for one, and Bijur hoped that Bendix's German rights would "dominate" the device of one Rushmore, which was already offered in the German market. There was also a pending American application for an apparently similar or allied contrivance by one Remy; this is the matter referred to in article 8 of the above agreement.

In this situation of affairs, Allen, Bijur, and Bendix at various times talked over what each party had to offer toward a union of forces, to the profit of all and avoidance of litigation and competition.

On July 9, 1914, Bijur and Allen, Bendix, and Dunn met at the office of Bijur's patent counsel, no other lawyer being present. Several hours were spent in discussion, and a stenographer was present who noted in shorthand what was dictated to her as the result of talk. At the end, there existed in shorthand the agreement above set forth, except the signatures and attestation clause. The latter was added by the stenographer from some form book or

the like. Dunn and Bijur left without seeing the result of the stenographer's labors, and on departure Bijur specifically authorized Allen to "sign for" the Bijur Company. Bendix and Allen did sign in duplicate in the presence of Bijur's counsel, and each departed with an original document.

Subsequent study of Bendix's German application did not satisfy Bijur and his counsel that its probable claims were wide enough to suit them, and on August 4th counsel notified Bendix's attorneys in writing that the document above set forth was not a contract, and that "all negotiations were closed." Subsequently Bendix bought up the Remy invention, though the plaintiff on August 5th notified the vendors that Bendix had no contract or agreement as to the Bijur patent.

Defendants then proceeded to act upon their asserted rights, and this suit resulted.

George W. Wickersham, E. Henry Lacombe, and Walter H. Pollak, all of New York City, for appellant.

John B. Stanchfield, of New York City, Samuel E. Hibben, of Chicago, Ill., and Alexander D. Falck, of Elmira, N. Y., for appellees.

Before COXE, WARD, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] The foregoing facts we consider established; so did the lower court in substance; and from that decision we should hesitate to depart, were we inclined so to do. The difference between spoken word and printed page is something that rightly gives to a decree, following open trial and dealing with facts, a weight not easily overstated. Brookheim v. Greenbaum, 225 Fed. 763, 141 C. C. A. 89.

From these physical facts, we infer that all the men who met on July 9th at counsel's office intended to make a contract, if they could agree on terms, and we think the incentives to agreement obvious and considerable. Each had something to give or give up, constituting consideration.

That a contract was made must also be found. It was a corporation's contract, but that statement assumes that men intended to make, and did make, such corporate agreement. Men may contract in such incomplete, obscure, informal, or even illegal terms that their intention is not carried out by the form of words they sign; they may also sign a writing plain, formal, and of a legal import beyond the purposes or desires of some of the contracting parties. Corporations may do the same things; they have no thoughts or purposes other than those of the men controlling them.

[2] When persons natural or artificial use words in contract making falling short of or going beyond intention, they must abide by the result of their efforts, unless a new agreement supersede the failure, mutual mistake of fact be shown, or fraud be established.

There was no fraud in this instance; the plaintiff's allegations in that behalf are not supported by the evidence. Nor was there any mutual mistake.

Of the men talking together on July 9th, it is evident that Allen, Dunn, and Bendix departed feeling that their desires were accomplished. Bijur deposes that he regarded the whole matter as tentative, and dependent on the worth of Bendix's German patent, while his attorney seems to have confined his activities to furnishing clerical conveniences,

after dictating to the stenographer much of the language afterwards written out. If he and Bijur did regard the signed document as no more than notes of talk, they neither said so at the time, nor inserted any such limitation in what they caused or permitted to be formally executed.

Recognizing that relief from the writing relied on by defendants is not obtainable on grounds of fraud or mistake, plaintiff asserts that the paper which looks like a contract is incomplete because its enforcement depended upon approval of, or satisfaction with Bendix's German patent claims; which would not serve Bijur's turn at all, unless they "dominated Rushmore."

[3] There are "contracts to make a contract" if one party thereafter choose so to do. American, etc., Co. v. Simon, 140 Fed. 529, 72 C. C. A. 45; Id., 153 Fed. 1020, 82 C. C. A. 675. But such singularity must appear in the contract made; the incompleteness must there be completely apparent; it cannot be created by parol. No suggestion of Bijur's reservation can be discerned in this document.

[4] It is also possible that the parties to a written contract may contemporaneously make another oral agreement, on a matter as to which the writing is silent. But such oral arrangement, to be enforceable, must be in respect of a matter distinct from that covered by the writing; one party cannot by parol set up in the guise of a separate contract something which devitalizes the writing, and changes or aborts the stated purposes thereof. Seitz v. Brewers' etc., Co., 141 U. S. 510, 12 Sup. Ct. 46, 35 L. Ed. 837; Harrison v. Fortlage, 161 U. S. 57, 16 Sup. Ct. 488, 40 L. Ed. 616. To accept this written agreement as meaning what plaintiff contends for is to violate the rule just stated. While we think that no oral contract is proven, none is asserted that is enforceable.

[5] Plaintiff further urges that the attempted execution of the contract was not such as to bind the Bijur Company. Any corporate act presupposes a delegated authority (Bank v. Dandridge, 12 Wheat. at 70, 6 L. Ed. 552), but the manner or method of that delegation is a matter with which third parties are little concerned. The officers of a corporation are its agents, and if they act within their actual authority, or even within the apparent scope thereof, the corporation will be bound; the by-laws which ordinarily prescribe corporate methods are private regulations as to the outside world. Rathbun v. Snow, 123 N. Y. 349, 25 N. E. 379, 10 L. R. A. 355. We have said that as matter of fact Mr. Bijur had made contracts for the corporation, without especial authority from the directors. The instances are not numerous, but they are the only like contracts proved from the company's history; they related to matters similar to that under consideration, and are sufficient proof (taken in conjunction with the other evidence) to establish a habit or course of business. It is obvious that, if this contract had been signed by Mr. Bijur personally, it never would have occurred to anyone connected with the Bijur Company to cavil at the technical sufficiency of execution. If he had such power, he expressly delegated it in pursuance of a course of business, and Sun, etc., Co. v. Moore, 183 U. S. 643, 22 Sup. Ct. 240, 46 L. Ed. 366, is applicable.

[6] It is also alleged as error that the court below granted specific performance at the instance of defendants, although (1) Bendix himself broke the contract, and (2) the Eclipse Company did not unite in the contract, was not a party to it, and cannot be itself decreed to perform.

(1) Bendix did not break his portion of the agreement; he complied therewith and purchased the Remy invention, although the plaintiff apparently sought to prevent such performance. In view of what Bendix actually did, the question whether plaintiff's conduct did not absolve him from even attempting acquisition from Remy need not be discussed.

(2) The Eclipse Company was made defendant herein solely as an alleged infringer; it is entitled to no specific performance and has obtained none. All its rights in and to the patent in question and under the contract made must be worked out through Bendix. The decree complained of is that a license such as was contemplated by the agreement must be given to Bendix. We have not the form of such license before us, but assume that, by the terms thereof, what Bendix may by sublicense give to the Eclipse Company will be (or has been) accurately defined in accordance with the language of the contract between plaintiff and Bendix. At all events, plaintiff's rights against Eclipse Company are a part of its rights against Bendix as licensee. The Eclipse Company's estate is but carved out of that conferred on Bendix.

From whatever angle viewed, this litigation ultimately presents an effort to change the plain meaning of a written document. The execution and delivery of that particular paper may have been ill advised; it may not even express Mr. Bijur's wishes or all of them; but it is clear, a corporate act, not obtained by fraud nor based on mutual mistake of fact, and therefore cannot be varied nor set aside.

Decree affirmed, with costs.