## FORD MOTOR CO. v. HOTEL WOODWARD CO.

(Circuit Court of Appeals, Second Circuit. February 24, 1921.)

No. 45.

1. **Appeal and error ☞1097(1)—Rulings on former appeal are law of case, to be followed, except in extraordinary circumstances.**

   The conclusions of law on a former appeal become the law of the case; and, while the court is not absolutely bound thereby, the rules should only be departed from under extraordinary circumstances.

2. **Frauds, statute of ☞115(4)—Agreement to give lease, signed by prospective lessor, enforceable, though providing for giving of mortgage by lessee, who did not sign.**

   Though it was part of a contract to give a lease that the lessee was to execute a mortgage to secure payment of the rent, it is sufficient, in an action for breach of the contract to make a lease, to show compliance with Real Property Law N. Y. § 259, requiring a contract for the leasing of land for longer than one year to be in writing and subscribed by the lessor, without showing that it was signed by the lessee, notwithstanding section 242, requiring estates in land to be created, etc., by conveyance in writing subscribed by the person creating it.

3. **Frauds, statute of ☞152(1)—Contract provable by oral testimony, unless statute pleaded.**

   The statute of frauds is a rule of evidence, and, if it be not pleaded, a contract within its terms can be proved by oral testimony alone.

4. **Frauds, statute of ☞125(3)—Oral contract to give lease not void, but only voidable.**

   Notwithstanding Real Property Law N. Y. § 259, declaring a contract for the leasing of real property for a longer period than one year void, unless in writing, etc., such a contract is not void, but only voidable.

5. **Frauds, statute of ☞118(2)—When letter referred to draft of lease, the draft was part of the letter.**

   Where a letter signed by prospective lessor was relied on as a memorandum of a contract to give a lease, and referred therein to a draft of a lease thereby approved as amended, the draft as amended became a part of the letter.

6. **Frauds, statute of ☞118(1)—"Memorandum" may consist of more than one paper.**

   A memorandum, under the statute, is not necessarily one paper, but may consist of a series of letters, telegrams, or written drafts.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Memorandum.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

271 F.—40

**7. Evidence ☞450(4)—Parties present when agreement in form of letter was written properly permitted to testify to meaning.**

Where an agreement to give a lease, in the form of a letter written by defendant's general attorney in the presence of plaintiff's president, and delivered to the president, stated that a question "of limitation of assignment of equity as security" was left until the lease was signed, such sentence required explanation, and the general attorney and president were properly permitted to testify as to its meaning.

**8. Landlord and tenant ☞22(4)—Dispute as to what was said, when agreement in form of letter was written, held for the jury.**

Where there was a conflict as to whether defendant's general attorney told plaintiff's president, at the time he signed an agreement, in the form of a letter, to give a lease of part of a proposed building, that defendant would not make the lease at that time, and that the letter was written merely to enable plaintiff to go ahead with its plan to finance its hotel, the question was for the jury.

**9. Landlord and tenant ☞22(4)—Subsequent modifications in proposed lease not evidence that minds had not met.**

Where defendant's general attorney wrote and delivered to plaintiff's president a letter approving modifications in a proposed lease, the fact that subsequent modifications were made in the contract was not evidence that the minds of the parties had not met at the date of the letter.

**10. Corporations ☞409—President, vice president, and secretary had prima facie authority to authorize attorney to agree to lease.**

Where the vice president of a corporation had charge of the whole negotiations with a prospective lessee of part of a building which the corporation contemplated constructing, and the president and secretary were also conversant with the matter, they had prima facie authority to authorize the general attorney to agree to give a lease.

**11. Corporations ☞426(6)—Directors' ratification of negotiations with prospective lessee of contemplated building ratified contract, and provision limiting cost did not restrict lessee's rights.**

Where negotiations by the management of a corporation with a prospective lessee of part of a building, which the corporation contemplated constructing, had resulted in a draft of a lease, providing for an annual rent of $70,000, with an additional rental of 5 per cent. interest on any cost of the building above $700,000, a resolution of the directors, ratifying such negotiations, ratified this contract, and a further provision in the resolution, limiting the cost of the building to $740,000, did not lessen the prospective lessee's rights.

**12. Appeal and error ☞1004(1)—Damages for breach of contract not reviewable, when no error in evidence or instructions.**

In an action for breach of contract to give a lease, the amount of damages are not reviewable on appeal, in the absence of any error in the admission of testimony or in the charge of the court.

**13. Courts ☞405(16)—Motion for new trial not part of record or bill of exceptions.**

Under Rev. St. U. S. § 997 (Comp. St. § 1653), rule 14 of the Circuit Court of Appeals for the Second Circuit (235 Fed. vi, 148 C. C. A. vi), and Code Civ. Proc. N. Y. § 1237, on writ of error to judgment, a motion for new trial is not a part of the bill of exceptions, because made after the trial is ended, and not part of the record for review, because discretionary, and because the record consists of the pleading, verdict, and judgment.

In Error to the District Court of the United States for the Southern District of New York.

Action by the Hotel Woodard Company against the Ford Motor Company. Judgment for plaintiff, and defendant brings error. Affirmed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Crisp, Randall & Crisp, of New York City (A. Lucking, of Detroit, Mich., and James M. Beck and W. Benton Crisp, both of New York City, of counsel), for plaintiff in error.

Holm, Whitlock & Scarff, of New York City (Charles H. Tuttle, of New York City, Stephen C. Baldwin, of Brooklyn, N. Y., and Victor E. Whitlock, of New York City, of counsel), for defendant in error.

Before WARD, HOUGH, and MANTON, Circuit Judges.

WARD, Circuit Judge. This is a writ of error to a judgment entered on the verdict of a jury in favor of the plaintiff in the sum of $600,000. The cause of action is for damages for breach of a contract to give the plaintiff a lease of certain premises to be constructed by the defendant in New York City. The defense is that there never was any meeting of the minds of the parties as to the terms of the proposed lease, and that there was no written memorandum of the contract, if contract there was, as required by the statute of frauds.

[1] The complaint was dismissed on a former trial. Hotel Woodward Co. v. Ford Motor Co., 258 Fed. 322, 169 C. C. A. 338. The conclusions of law of that appeal became the law of the case. They were: (1) That the statute of frauds of the state of New York, and not of the state of Michigan, applies. (2) That it was for the jury to determine whether there had been a meeting of minds of the parties. (3) That the letter of August 31, 1916, signed by Robertson, the defendant's general attorney, was a sufficient memorandum under the statute, if he was the defendant's "lawfully authorized agent." (4) That on the record then before the court there was a question for the jury to say whether the officers of the defendant who authorized Robertson to act in the premises were themselves acting with authority.

We have held in Johnson v. Cadillac Co., 261 Fed. 878, 8 A. L. R. 1023, that we are not absolutely bound by the conclusions of the court upon a former appeal; but we should depart from the rule only under extraordinary circumstances, and we are not at all disposed to do so in this case.

[2] On the second trial the defendant was allowed to plead section 242 of the Real Property Law (Consol. Laws, c. 50), and it contends that, as it was a part of the contract that the plaintiff was to execute a mortgage to secure payment of the rent, the memorandum of contract is invalid, because not signed by it as well as by the defendant. But the complaint is for breach of contract to make a lease, and we are of opinion that the only statutory requirement applicable is section 259 of the Real Property Law, which reads:

"Sec. 259. A contract for the leasing for a longer period than one year, or for the sale, of any real property, or an interest therein, is void, unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing, subscribed by the lessor or grantor, or by his lawfully authorized agent."

[3, 4] The statute is a rule of evidence. If it be not pleaded, even a contract within its terms can be proved by oral testimony alone.

Matthews v. Matthews, 154 N. Y. 288, 292, 48 N. E. 531. Therefore such a contract is not void, but only voidable, and the word in the statute must be so understood.

Next, it is to be observed that the statute does not require the contract to be in writing, but only a memorandum of it, expressing the consideration, to be signed by the lessor or by his lawfully authorized agent. The letter of August 31, 1916, was as follows:

"Detroit, U. S. A., August 31, 1916.

"Hotel Woodward Company, 55th Street & Broadway, New York City—Gentlemen: Attention of Mr. Green. Confirming our conversation, will say that draft of lease as discussed is entirely acceptable to us, and same will be prepared immediately for execution. We have consented to the alterations suggested by your attorney, as they do not seem in any manner to have changed the intent of the lease. We leave the question of limitation of assignment of equity as security until lease is signed, but think this can be arranged to your entire satisfaction.

"As soon as the lease is ready we will come on to New York and close up the entire matter of the execution of the lease and the security as agreed. In the meantime you may go ahead with any plans you have in connection with this proposition, so that there will be no delay when the architects' plans are ready. Trusting this will be entirely satisfactory, we are,
"Yours very truly,                    Ford Motor Company,
                              "L. B. Robertson, Gen'l Attorney."

[5, 6] It was written by the defendant's general attorney, Robertson, in the presence of the plaintiff's president, Green. It refers to a draft of lease then before the writer, which had been prepared by the defendant's attorney, and upon which the plaintiff's attorney had suggested certain emendations in writing. Thus the written draft as amended became a part of the letter, and defendant's general attorney declared it acceptable to the defendant. A memorandum under the statute is not necessarily one paper, but may consist of a series of letters, or telegrams, or written drafts. Ryan v. United States, 136 U. S. 68, at page 83, 10 Sup. Ct. 913, at page 918 (34 L. Ed. 447). Mr. Justice Harlan said:

"Did the papers which passed between the parties, constituting the memorandum of the transaction, contain such a description of the lands in dispute as was sufficient, in connection with extrinsic evidence not contradictory of nor adding to the written description, to meet the requirements of the Michigan statute of frauds? We say 'the papers,' because the principle is well established that a complete contract binding under the statute of frauds may be gathered from letters, writings and telegrams between the parties relating to the subject matter of the contract, and so connected with each other that they may be fairly said to constitute one paper relating to the contract. Beckwith v. Talbot, 95 U. S. 289, 292; Ridgway v. Wharton, 6 H. L. Cas. 238; Coles v. Trecothick, 9 Ves. 234, 250; Cave v. Hastings, 7 Q. B. D. 125, 128; Long v. Millar, 4 C. P. D. 450, 456."

But it is contended by the defendant that the letter plus the draft of lease shows that the minds of the parties had not met, because of this sentence in the letter:

"We leave the question of limitation of assignment of equity as security until lease is signed, but think this can be arranged to your entire satisfaction."

**[7-9]** Quite obviously this sentence needs explanation, and Green and Robertson, who were the parties present when the letter was written by Robertson and delivered to Green, were properly permitted to testify on the point. Both agree that what was referred to was the provision in the draft lease that the mortgage to be given by the plaintiff to secure payment of the rent should cover all its equity "in the furniture, fixtures, furnishings, etc., placed by it in the building hereby leased." Both agree that the lessee wanted this to be altered, because likely to affect its credit in financing its hotel. But the provision was in the draft lease, and had been accepted by the plaintiff, which draft, as amended, was declared acceptable to both parties. Green testified that this was only a suggestion by the plaintiff for the defendant's consideration; but Robertson testified that he told Green that Klingelsmith, the defendant's vice president and treasurer, would not make the lease at this time, and that the letter was written merely to enable Green to go ahead with his plan to finance the hotel. This was a question for the jury (Rankin v. Fidelity Trust Co., 189 U. S. 242, 252, 23 Sup. Ct. 553, 47 L. Ed. 792), and manifestly the jury has adopted Green's story. The fact that subsequent modifications were made in the contract is no evidence that the minds of the parties had not met August 31, 1916, but it is significant that the defendant subsequently agreed to grant what the plaintiff asked.

Judge Augustus N. Hand instructed the jury that they could not give a verdict for the plaintiff unless they found that the defendant had agreed to make the lease, irrespective of the cost of construction, and that the plaintiff had agreed to give security for payment of the rent on its furniture, etc., in the new building. The verdict establishes both of these points in favor of the plaintiff.

The importance of cost of construction is that both parties supposed, at the time the letter of August 31, 1916, was written, and until early in 1917, that the building could be erected for about $700,000, 10 per cent. upon which represented the rent of $70,000. But the lessor subsequently refused to sign the lease, upon the ground that the cost would be nearer $1,250,000. The question of cost, however, was fully covered by the draft lease, which provided that—

"In addition to the sum above provided to be paid [i. e., on the estimated cost of $700,000], if the cost of the building is in excess of $700,000, the lessee will pay to the lessor an additional rental on a basis of five (5%) per cent. interest per annum of such excess cost."

**[10]** This brings us to the question of Robertson's authority to sign the letter of August 31, 1916. Klingelsmith, the vice president, after a conversation with Green upon the subject, sent him up to Robertson's office on the same day with the draft lease "to fix the matter up." At least so Green testified; Klingelsmith merely saying that he had referred the matter to Robertson. Klingelsmith had certainly charge of the whole negotiation, and Henry Ford, the president, and Edsell Ford, the secretary, were also conversant with it. This established a prima facie authority in the managing officers to authorize Robertson to do what he did.

"The president or other general officer of a corporation has power, prima facie, to do any act which the directors could authorize or ratify [citing authorities]." Hastings v. B. L. Insurance Co., 138 N. Y. 473, 479, 34 N. E. 289.

November 2, 1916, the following resolution was offered at a meeting of the defendant's directors:

"Whereas, this company owns a parcel of land on Broadway and Fifty-Fourth street, New York, suitable for New York offices and salesroom;

"And whereas, the land is very valuable, and to construct simply an office and salesroom would result in an exorbitantly high cost for offices and salesrooms;

"And whereas, the management of this company, on account thereof, has entered into preliminary negotiations with the Hotel Woodward to occupy part of a suitable building on such site:

"Therefore, resolved, that this company proceed with the erection of the proposed building suitable to that site, for the use of this company as offices and salesroom, and that the negotiations of the management looking to the lease of the balance thereof to the Hotel Woodward Company for a period of 21 years be and they are hereby ratified and confirmed, and the management is authorized to erect the building at an approximate cost of $740,000, and enter into said lease.

"After some discussion further consideration of this resolution was deferred until the next meeting."

[11] At the next meeting this resolution was ratified. The resolution ratified the negotiations of the management with the plaintiff, and that negotiation was expressed in the draft lease with some subsequent modifications. It provided that the rent should be $70,000 on an estimated cost of construction of $700,000, with an additional rental of 5 per cent. interest on any cost above that sum. This was the contract which was ratified and the plaintiff's rights could not be lessened by the provision in the resolution that the management was authorized to erect the building at an approximate cost of $740,000.

[12] The last question is as to the damages. If there was no error in the admission of testimony or in the charge of the court upon this subject, it is wholly without our jurisdiction on appeal. The defendant does not complain of the court's instructions to the jury. It rests its right to review on the refusal of the court to grant a motion for a new trial, on the ground that the verdict was evidently the result of passion and prejudice upon the jury's part.

[13] All that is before us on this writ of error is the bill of exceptions, covering so much of the evidence at the trial as is necessary to present the exceptions taken in the course of it. A motion for a new trial is not a part of the bill of exceptions, because it is made after the trial is ended. It is not part of the record for review, because it is discretionary, and because the record consists of the pleadings, process, verdict and judgment, like the judgment roll in the state court. Code of Civil Procedure, § 1237; Clune v. United States, 159 U. S. 590, 593, 16 Sup. Ct. 125, 126 (40 L. Ed. 269).

"An appellate court considers only such matters as appear in the record. From time immemorial that has been held to include the pleadings, the process, the verdict, and the judgment, and such other matters as by some statutory or recognized method have been made a part of it. There are, for instance, in some states, statutes directing that all instructions must be re-

duced to writing, marked by the judge 'Refused' or 'Given,' and attested by his signature, and that when so attested and filed in the clerk's office they become a part of the record. But in the absence of that or some other statutory provision, a bill of exceptions has been recognized as the only appropriate method of bringing onto the record the instructions given or refused. Struthers v. Drexel, 122 U. S. 487, 491; Supreme Court rule No. 4, 108 U. S. 574; Insurance Company v. Radding, 120 U. S. 183, 193; McArthur v. Mitchell, 7 Kansas, 173; Moore v. Wade, 8 Kansas, 380; Kshinka v. Cawker, 16 Kansas, 63; Lockhart v. Brown, 31 Ohio St. 431; Pettett v. Van Fleet, 31 Ohio St. 536."

Section 997 of the U. S. Revised Statutes (Comp. St. § 1653) provides:

"Sec. 997. *Procedure on Error and Appeal—Removal of Causes by Writ of Error.* There shall be annexed to and returned with any writ of error for the removal of a cause, at the day and place therein mentioned, an authenticated transcript of the record, an assignment of errors, and a prayer for reversal, with a citation to the adverse party."

Our rule 14 (235 Fed. vi, 148 C. C. A. vi) provides:

"1. The clerk of the court to which any writ of error may be directed shall on demand of any party and payment of the clerk's fees, make a return of the same by transmitting a true copy of the record, bill of exceptions, assignment of errors, and all proceedings in the case, under his hand and the seal of the court."

In Railway Co. v. Heck, 102 U. S. 120, 26 L. Ed. 58, Chief Justice Waite said:

"We have uniformly held that, as a motion for a new trial in the courts of the United States is addressed to the discretion of the court that tried the cause, the action of that court in granting or refusing to grant such a motion cannot be assigned for error here. Schuchardt v. Allens, 1 Wall. 359; Insurance Company v. Barton, 13 Wall. 603."

In Mattox v. United States, 146 U. S. 140, 13 Sup. Ct. 50, 36 L. Ed. 917, the trial court on a motion for a new trial excluded affidavits showing that a newspaper containing an account of the trial prejudicial to the defendant, charged with and convicted of murder, had been sent into the jury room and read by the jurors after they had retired to consider their verdict. The Supreme Court held that this was reviewable, on the express ground that the trial court, having excluded the affidavits, had exercised no discretion whatever as to their contents. No such charge is made here. The trial judge did exercise his discretion. What is complained of is that the conclusion of the jury was erroneous and that the trial judge erred in not granting a new trial.

We have constantly followed the case of Railway Co. v. Heck, supra, in this circuit. Morning Journal Association v. Rutherford, 51 Fed. 513, 2 C. C. A. 354, 16 L. R. A. 803; Smith v. Sun Printing & Publishing Association, 55 Fed. 240, 5 C. C. A. 91. See, also, Ramsdell v. Goumis, 228 Fed. 864, 867, 143 C. C. A. 262, and Suravitz v. Pristasz (C. C. A. 3d) 201 Fed. 335, 119 C. C. A. 573.

The judgment is affirmed.