## EDWARD HARDIN, Appellant, *v.* THE MORGAN LITHOGRAPH COMPANY, Respondent.

Contract — commissions — corporations — evidence — authority of president of corporation to make or ratify contract to pay commissions on business obtained through introduction to prospective customer — error to strike out testimony of plaintiff as to conversation in which president admitted ratification of contract made by agent — such testimony sufficient foundation for evidence of terms of contract — foreign law not proved by citation of cases.

1. The president of a corporation, as managing agent, may, in the absence of restrictions, make such ordinary contracts as custom and the necessities of the business would justify or require and it may be presumed that he had power to authorize or ratify a contract to pay commissions on business obtained by it through the services of another even though the other agreed to do no more than introduce it to a prospective customer, but the corporation should be allowed to prove that, by reason of its own course of business or the custom of the trade, authority was in truth lacking.

2. It was, therefore, error, in an action to recover such commissions, to strike out testimony of plaintiff as to a conversation he had had with the president of defendant in which the latter admitted that a contract had been made, that the plaintiff had performed and that defendant had had the benefit thereof.

3. And such testimony, in the absence of evidence to the contrary, laid the foundation for the admission of testimony of plaintiff as to an earlier conversation he had had with defendant's agent and would have permitted him to testify for whom the agent was acting and what conversation he had with him, testimony which he had not been permitted to give as he had laid no foundation therefor by showing the agent's authority to make a contract of the character alleged. Plaintiff should have been permitted to prove his *prima facie* case and a dismissal of his complaint for failure to establish a cause of action was error.

4. The law of a foreign State is not proved by the citation of cases on appeal.

*Hardin* v. *Morgan Lithograph Co.*, 219 App. Div. 817, reversed.

(Argued January 19, 1928; decided February 14, 1928.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 29, 1927, affirming a judgment in favor of defendant, entered upon a dismissal of the complaint and a directed verdict on the counterclaim by the court at a Trial Term.

*Howard Osterhout, Burgess Osterhout* and *Charles F. Bailey* for appellant. The president of a corporation has power to ratify any contract which he might originally have made for the corporation. (*Silva* v. *Metropolitan Drug Co.,* 10 J. & S. 307; *Smith* v. *Martin Anti-Fire Car Heater Co.,* 19 N. Y. Supp. 285; *Cairo R. Co.* v. *Mahoney,* 82 Ill. 73; *Depot Realty Syndicate* v. *Enterprise Brewing Co.,* 87 Oreg. 560; *Hosteter* v. *Shoe Co.,* 171 Iowa, 346; *White* v. *Elgin Creamery Co.,* 108 Iowa, 522; *Louisville, E. & St. L. Co.* v. *McVoy,* 98 Ind. 391; *Braman, Dow & Co.* v. *Kennebec Gas & Fuel Co.,* 117 Maine, 291; *Singer Mfg. Co.* v. *Belgart,* 84 Ala. 519; *Toledo, Wabash & Western Ry. Co.* v. *Rodrigues,* 47 Ill. 188; *Toledo, Wabash & Western Ry. Co.* v. *Prince,* 50 Ill. 26.) *Prima facie* proof that the president of a corporation had power to make (and hence ratify) a contract is made when it is shown that he purported to ratify such contract which his board of directors might have authorized him to make. (*Paterson* v. *Robinson,* 116 N. Y. 193; *Hastings* v. *Brooklyn Life Ins. Co.,* 138 N. Y. 473; *Oaks* v. *Cattaraugus Water Co.,* 143 N. Y. 430; *Sun Printing Assn.* v. *Moore,* 183 U. S. 642; *Hotel Woodward Co.* v. *Ford Motor Co.,* 258 Fed. Rep. 322; *Norman* v. *Loomis-Manning Filter Co.,* 123 App. Div. 739; *Lyon* v. *West Side Transfer Co.,* 132 App. Div. 777; Morawetz on Priv. Corp. [2d ed.] §§ 336, 538, 593; *Patterson* v. *Ongley,* 87 Hun, 462; *Westchester Mortgage Co.* v. *McIntire, Inc.,* 174 App. Div. 446; *Gerard* v. *Empire,* 195 App. Div. 244.) Plaintiff's conversation with Morgan, excluded over plaintiff's objection and exception, was evidence not only of ratification but some evidence of original authority in Gaylor to make the

contract sued on. (1 Mechem on Agency [2d ed.], 354, 355, 356; *Olcott* v. *Tioga R. R. Co.*, 27 N. Y. 546; *Matter of Zinke*, 90 Hun, 127; *Dickinson* v. *Salmon*, 36 Misc. Rep. 169; *Columbia Land Co.* v. *Tinsley*, 22 Ky. L. 1082; *Sherman* v. *Fitch*, 98 Mass. 59.)

*Siegfried F. Hartman* for respondent. Even under the New York doctrine a president has no authority, even *prima facie*, to make or ratify an unusual or extraordinary contract. (*Lyon* v. *West Side Transfer Co.*, 132 App. Div. 777; *Caldwell* v. *Mut. Reserve Fund Life Assn.*, 53 App. Div. 245; *Bassick* v. *Ætna Explosives Co.*, 246 Fed. Rep. 974; *Com. Wood & Cement Co.* v. *Northampton P. C. Co.*, 115 App. Div. 388; 190 N. Y. 1; *Stanley* v. *Franco-American Ferment Co.*, 97 Misc. Rep. 401; *Chard* v. *Ryan-Parker Constr. Co.*, 182 App. Div. 455; *Thompson* v. *Marseillaise French Baking Co.*, 85 Misc. Rep. 392; *Usher* v. *N. Y. C. & H. R. R. R. Co.*, 76 App. Div. 422; 179 N. Y. 544; *Greaves* v. *Amer. Inst. for Scientific Research*, 114 Misc. Rep. 413; *Tobin* v. *Roaring Creek & C. R. Co.*, 86 Fed. Rep. 1020; *Camacho* v. *Hamilton Bank Note & Eng. Co.*, 2 App. Div. 371.) Under the law of Ohio, under which the defendant was incorporated and where the alleged ratification occurred, Morgan, as president, had no authority to make any contract with the plaintiff. (*Belting Co.* v. *Gibson*, 68 Ohio St. 442; *Scollan* v. *Lammers Co.*, 14 Ohio App. 130; *Indemnity Co.* v. *Shovel Co.*, 112 Ohio St. 136; *Foundry Co.* v. *Cheseborough*, 18 Ohio C. C. 783; *Matter of Furniture Company*, 7 Ohio L. R. 555; *New York Starch Co.* v. *Gruner*, 13 Ohio C. C. [N. S.] 355; *Second Mutual Life Ins. Co.* v. *Shotte & Sons Co.*, 11 Ohio C. C. [N. S.] 404; *Marmit Co.* v. *Cinn. City*, 12 Ohio C. C. [N. S.] 227; *Armstrong* v. *Bank*, 152 U. S. 346; *Wadsworth* v. *Reir*, 13 Ohio St. 123.) Assuming Morgan had authority to ratify a contract such as that here involved, the evidence as to ratification was clearly inadequate. (*Bright* v. *Canadian Int. Stock Yard*

*Co.*, 83 Hun, 482; *Trustees, etc., v. Bowman*, 136 N. Y. 521; *Pope v. Hoyt*, 200 App. Div. 475; 235 N. Y. 526; *Pritchard v. Sigafus*, 103 App. Div. 535; *Dunning v. Co. of Orange*, 139 App. Div. 249; *Weber v. Bridgman*, 113 App. Div. 600; *Indemnity Co. v. Shovel Co.*, 112 Ohio St. 35; *Slocum v. Gilman*, 84 Hun, 405; *Norden v. Duke*, 120 App. Div. 1; *Merritt v. Bissell*, 155 N. Y. 396; Mechem on Agency [1st ed.], § 131.) The plaintiff's proof failed to show that Gaylor had any authority to make a contract such as that here involved. (Mechem on Agency, § 899; Story on Agency [9th ed.], § 387; *Kalina v. Gair Co.*, 125 N. Y. Supp. 1040; *Jones v. Keeler*, 81 N. Y. Supp. 648; *Atlee v. Fink*, 75 Mo. 100; *National Cash Register Co. v. Ison*, 94 Ga. 463; *National Cash Register Co. v. Hagen*, 74 Tex. Civ. App. 281.)

POUND, J. The complaint alleges that:

" II. On or about the 1st day of July, 1918, or prior thereto, the defendant promised plaintiff that if plaintiff introduced defendant to Famous Players-Lasky Corporation or officers or agents thereof, and if thereafter defendant secured lithograph business from said Famous Players-Lasky Corporation, defendant would pay plaintiff five (5%) per cent commission on the gross lithograph business which defendant should do with said Famous Players-Lasky Corporation.

" III. Thereafter and pursuant to said agreement plaintiff did introduce defendant to Famous Players-Lasky Corporation or officers or agents thereof, and upon information and belief defendant thereafter did lithograph business with the Famous Players-Lasky Corporation, the exact amount of which plaintiff does not know and has no means of ascertaining.

" IV. Plaintiff has duly performed all the terms, conditions and promises of said agreement on his part to be performed " and thereon plaintiff demands judgment for $100,000.

The answer puts in issue these allegations but admits that defendant had done lithograph business with the Famous Players-Lasky Corporation. A counterclaim asks judgment for $2,000 on a promissory note, which has been had against plaintiff.

That defendant is in the billboard lithograph business and that Famous Players-Lasky Corporation uses billboard lithographs for advertising its moving pictures may be assumed without hesitation. On the trial, it appeared that plaintiff had a large experience in the billboard advertising business. He testified that in 1917 he met Edward Gaylor, a salesman for the defendant company in New York, in connection with another contract for this class of work. He was not allowed to testify for whom Mr. Gaylor was acting, or what conversation he had with him, as he had laid no foundation therefor by showing Gaylor's authority to make a contract of the character alleged in the complaint for the defendant company. Dropping this line of inquiry temporarily, plaintiff gave evidence of a conversation with Mr. Morgan, the president of the defendant, in April, 1919, in Cleveland, Ohio, as follows: " Q. What was the conversation with Mr. Morgan in April, 1919, when you saw him in Cleveland? A. I told him I want to get $10,000 to go into business, to finance my business and he said he couldn't let me have that much money. I said, ' Well, there is quite a lot of money coming to me on that contract, the Famous Players.' He says, ' There wont be anything due on that for a year, we have to take over about $300,000 worth of lithographs from them and give them credit for it before we will get any money for ourselves out of it.' Finally — I said to him, ' Can't you let me have some money personally? ' He finally decided to let me have a personal loan of $2,000, which was independent of the Famous Players," and further testified that " The first day he told me — the first day I saw him I didn't get the money, he said to see him the next day. I saw him the next

day and he gave me a check for $2,000 and I gave him a note for $2,000. After he told me that the contract — there wouldn't be any money due me on the contract until after they had disposed of all the lithographs they had taken over from the Famous Players," and gave a third statement of the conversation as follows: " Mr. Morgan at that time told me it would be some time before any of that commission would be due, something like about a year before they would start to make any money out of the company. I said, ' Well, I will have to let it go until such time.' So he made this personal loan, which was entirely separate and independent from the other," and again he testified that Morgan said: " It will be a nice contract. There would be a lot of money made out of it and it would take some time."

This evidence was all stricken out on defendant's motion and an exception was taken. It was stricken out because the court ruled in substance that the president of a corporation, as such, had no authority to ratify an unauthorized act of a salesman, or to ratify any agreement that he as president was not authorized to make.

Plaintiff then made another ineffectual effort to prove the conversation he had with Gaylor in 1918.

Defendant's counsel made a concession as follows: "For the purpose of expediting the trial, I make the concession which is intended to be simply this, that *if the plaintiff was able to prove a contract, such as is claimed in the complaint, then we concede that there would be an amount of damage.*" Plaintiff's counsel also stated without question that " It is conceded that there was a contract made between Famous Players and the defendant on September 16, 1918, or thereabouts, whereby the defendant was to make lithographs for Famous Players, and that a large volume of business was done under that contract, and that if the Court would permit the conversation between the plaintiff and Mr. Gaylor, which has already been excluded; and if the Court would permit

22

to stand the conversation between the plaintiff and Mr. Morgan, which the Court has stricken out, the plaintiff could produce evidence of damage."

The complaint was then dismissed for failure to establish a cause of action, without the offer of further proof by plaintiff. As he was not allowed to prove the contract, it would have been idle for him to attempt to show performance and damages. It may be assumed that, if plaintiff could lay a proper foundation for evidence of the conversation with Gaylor, he would testify to the terms of the contract as set forth in the complaint and give evidence bearing on performance on his part and damages.

This is a question merely of making out a *prima facie* case by the plaintiff so as to shift the burden of going on with the proof to the defendant. Did defendant's president have power, *prima facie*, to ratify a contract of the character set forth in the complaint made between plaintiff and defendant through Gaylor, the defendant's employee? If so, did plaintiff's evidence of his conversation with the president have sufficient probative force as evidence of such ratification so that plaintiff should have been allowed to go on with his case?

The trial proceeded on the theory that the directors of a business corporation could authorize or ratify a contract to pay commissions on business obtained by it through the services of another, even though the other agreed to do no more than introduce it to a prospective customer but that no presumption existed that the president had such authority. The presumption as to the authority of the president of a corporation has been broadly stated: " The president, having full personal charge of the business which the defendant was organized to transact, represented the corporation and *prima facie* he had power to do any act which the directors could authorize or ratify." (*Hastings* v. *B. L. Ins. Co.*, 138 N. Y. 473, 479; *Oakes* v. *C. W. Co.*, 143 N. Y. 430, 436).

The president, as managing agent, may, in the absence

of restrictions, make such ordinary contracts as custom and the necessities of business would justify or require. (*Peck* v. *Dexter S. P. & P. Co.*, 164 N. Y. 127, 129; *Powers* v. *Schlicht H. L. & P. Co.*, 23 App. Div. 380; affd. on op. below, 165 N. Y. 662.) The authority of the president, his apparent power to make or ratify the contract in question, may be presumed, but the corporation should be allowed to prove that, by reason of its own course of business or the custom of the trade, authority was in truth lacking.

This particular contract is said to be so broad and sweeping as to enable us to take judicial notice of its extraordinary quality and remove it from the category of implied authority. The court cannot say on the meager record before it that the contract is so extraordinary as to be beyond the implied power of ratification by the president. On the trial it was conceded that an introduction in business circles may have a commercial value. The question is one of evidence rather than inference.

The claim is made that in Ohio " in the absence of express authority, *and* of such a course of dealing with the world as clearly implies authority to do the controverted act the corporation can be bound only by its board of directors " (*Belting Co.* v. *Gibson*, 68 Ohio St. 442.) The Ohio law is not proved by the citation of cases on appeal and the point is not raised on the record.

Plaintiff should have been permitted to prove his *prima facie* case. He was thrown out of court somewhat unceremoniously. He offered evidence of ratification. The president of the defendant said, if plaintiff is to be believed, that no commissions were due on plaintiff's contract. The terms of the contract were not stated but there was an implied admission that a contract had been made and performance had; that it had been knowingly and consciously ratified and that the defendant had had the benefit of it. So far as the admissions of the president

went, implying, in the absence of evidence to the contrary, his authority to make them, they laid a foundation for the °admission of the evidence of the conversation with Gaylor, subject to defendant's right to negative the authority of its president thus *prima facie* established.

The judgments should be reversed and a new trial granted, with costs to abide the event.

Cardozo, Ch. J., Crane, Lehman and O'Brien, JJ., concur; Andrews and Kellogg, JJ., dissent.

Judgments reversed, etc.