LOTTIE D. LARGE, Respondent, Appellant, *v.* WIRE WHEEL CORPORATION OF AMERICA, Appellant, Respondent.

Fourth Department, March 14, 1928.

Sales — breach by buyer — validity of contract — contract was oral and stipulated that defendant would purchase 750 automobile rims daily until defendant's then supply was exhausted and thereafter entire output of plaintiff's assignor for life of patent — at trial claim was limited to first part of contract — contract was entire and void under Statute of Frauds as not to be performed within one year — verdict in favor of plaintiff is contrary to evidence.

The plaintiff as assignee sues to recover damages for the breach of an alleged oral contract whereby the defendant agreed to purchase from the plaintiff's assignor 750 automobile rims daily until the supply the defendant then had on hand or under contract was exhausted, and thereafter the entire output of the plaintiff's assignor during the life of a patent on the rims. On the trial the plaintiff limited the proof to the first part of the contract which would not have been invalid on the ground that the contract was not to be performed within one year. The contract, however, if it had been proven, was a single contract and could not be divided, and, therefore, since it was to run for the life of the patent it was void under the Statute of Frauds (Pers. Prop. Law, § 31, subd. 1) as not to be performed within one year.

There is no proof that the defendant's vice-president and general manager had authority to make the contract and the verdict of the jury against the defendant was inconsistent with the charge which was to the effect that said officer did not have apparent authority to make a contract extending over a period of years.

Furthermore, the evidence does not show that a contract as alleged in the complaint was actually made by the parties.

APPEAL by the defendant from a judgment of the Supreme Court, entered in the office of the clerk of the county of Erie on the 31st day of December, 1926, and from an order entered on the 3d day of January, 1927.

Appeal by the plaintiff from so much of the judgment as dismisses the third, fourth and fifth causes of action.

*Hamilton Ward* [*Dana L. Spring* of counsel], for the plaintiff.

*Falk, Phillips & Schlenker* [*John Lord O'Brian* and *Ralph Ulsh* of counsel], for the defendant.

CLARK, J. This action was brought to recover damages for the breach of an alleged oral contract claimed to have been made by defendant, acting through its vice-president and general manager, and the Johnson Rim and Parts Company, a corporation formed subsequently to the making of the alleged contract to purchase of the Johnson Company 750 detachable rims for automobile wheels per day until such time as the rims defendant then had on hand or had contracted to purchase were exhausted, and that after such time it would purchase of the Johnson Company the entire output of the plant which it was to erect, buying 1,500 rims per day during the period covered by the Johnson patent for said rims, which would be seventeen years.

The contract was entirely oral and its only basis is found in certain conversations between Oscar J. Rhode, vice-president and general manager of the defendant, and Preston T. Large and Hamilton R. Large, two of the organizers of the Johnson Rim and Parts Company, and sons of the plaintiff.

These conversations took place before the incorporation of the Johnson Rim and Parts Company, during the months of June and July, 1919.

The defendant was then and had been for some time a manufacturer of wire wheels for use upon automobiles.

Preston and Hamilton Large had come in contact with Charles E. Johnson, who had worked out an improvement in the rim of an automobile wheel, especially adapted for use with wire spokes. Preston and Hamilton Large at this time were in negotiations with Johnson for the purchase of his invention and of the patents on the same for which he had already made application. In fact, the acquisition of those rights by Messrs. Large, was then practically assured. The invention had already been brought to the attention of Mr. Rhode by Johnson himself. Rhode was impressed with Johnson's improvement, and without question encouraged Preston and Hamilton Large to go into the business of manufacturing rims

under the Johnson patent, and assured them of his aid.  Preston and Hamilton Large had under consideration the incorporation of the company to manufacture such rims, the co-operation of other members of their family in the business, the building of a factory and the organization of the operating force.

While this project was being discussed with Mr. Rhode according to the evidence given by Preston and Hamilton Large, Rhode said to them that the defendant would take from the company to be organized by the members of the Large family 750 rims a day until such time as the supply of other types which the defendant had on hand and on order was exhausted, and then after that defendant would take the entire output of the factory, that is, from 1,000 to 1,500 rims per day for the life of the Johnson patent, and that the defendant would take these rims at a price which would be the same as was charged for the rim of a certain other manufacturing concern which was named.

The patent was issued in December, 1920.   The Johnson Rim and Parts Company, Inc., was incorporated in August, 1919. Preston and Hamilton Large, their mother, the plaintiff and two other brothers were directors.   A factory was built and the building was completed in March, 1920.   In May the Johnson Company was ready to make its first rims.   It first supplied to the defendant a limited number of rims for experimental purposes.   In August, 1920, the defendant gave the Johnson Company a written order for 11,000 rims.   These were delivered over a period from August, 1920 to June, 1921, and were all paid for by the defendant.   The rim proved unsatisfactory in use, and defendant declined to buy more rims.   Later the Johnson Company was adjudicated a bankrupt, and the trustee in bankruptcy assigned to this plaintiff the demands of the bankrupt against the defendant for breach of the comtract to purchase rims.   The claim for damages does not grow out of the order for 11,000 rims.   They were fully paid for by defendant.

Recovery has been awarded plaintiff for a breach of the executory promise to take or purchase rims under a verbal contract which the plaintiff claims was made for the Johnson Rim and Parts Company by two of its incorporators before its incorporation.

Although the contract is alleged in the complaint substantially in the form given above, on the trial plaintiff urged a recovery only in respect to that part of Rhode's alleged promise relating to the rims which were to be taken before those of other types on hand and on order should be exhausted.

The plaintiff thus seeks to cut the promise into two contracts, one to last until the exhaustion of the rims of other types, and the

other to begin upon the exhaustion of such other rims and to last throughout the life of the patent.

The defendant not only denies that any such promise was made on its behalf, but sets up as a defense the provisions of the Statute of Frauds making an agreement, promise or undertaking void which by its terms is not to be performed within a year from the making thereof, unless it or some note or memorandum thereof be in writing and subscribed by the party to be charged therewith, or by his lawful agent.   (Pers. Prop. Law, § 31, subd. 1.)

The defendant also urges, among other things, that Rhode was without authority to bind the defendant by such a promise as it is claimed he made.

If defendant had contracted to purchase at a definite price a definite number of rims per day until such time as rims of other types which he might have on hand, or on order, on a certain date were exhausted, there would not have been an agreement which by its terms was not to be performed within a year from the making thereof.   In such case the terms of the agreement would contemplate no certain length of time for the completion of the contract because the exhaustion of the rims of other types might occur almost immediately, or only after a very long period. The period would be indefinite, and by the terms of the contract not necessarily longer than one year.   (*International Ferry Co.* v. *Am. Fidelity Co.*, 207 N. Y. 350; *Kent* v. *Kent*, 62 id. 560.)   Even if we assume that was part of Rhode's promise it was not the whole of it.

Equally important is the promise thereafter to take the entire output of the factory from 1,000 to 1,500 rims per day during the life of the patent.   As the patent was not then issued this contemplated a period which would not expire for more than seventeen years from the day when the promise was made.   (See U. S. R. S. § 4884; now U. S. Code, tit. 35, § 40.)

If a patent is issued its life is not uncertain, but continues during the statutory period.   If it is declared invalid it has had no life at all.   So the life of a patent is a definite period, and this part of the alleged promise of Rhode was clearly within the Statute of Frauds.

There were not two contracts; at best there was but one contract. When deliveries were made under it payment was earned, and as in the case of any continuous contract for service or the delivery of goods, upon partial performance it would have been severable so as to entitle the performing party to recover for goods delivered. But as long as it was executory, as in this case, it was not divided and not separated, but was either good or bad as a whole.

" A contract though within the statute as to some portion of the performance promised by the defendant, may not be as to the remainder. Such a contract is nevertheless unenforceable in any part, since the contract is an entirety, and the fact that part cannot be enforced involves the unenforceability of the whole. Even though the contract is divisible in its nature and a divisible portion of performance on both sides may not be within the statute, the same result must be reached. As a divisible contract is not several contracts but a single agreement, neither party can be required to perform part unless the whole is enforceable. Therefore, so long as the contract is wholly executory, it seems obnoxious to the statute unless it can be saved under the principles of part performance or of contracts executed on one side referred to in the preceding sections as adopted by some courts." (Willis. Cont. § 532; Willis. Sales [2d ed.], § 72-b.)

If there was any contract at all as claimed by plaintiff it was an entire contract and could not be split up at the convenience of plaintiff in order to take a portion of it out of the statute. If any part of the contract was void it was void in its entirety. (Willis. Cont. § 532 *supra; R. & L. Co.* v. *Metz,* 175 App. Div. 276; aff'd., 219 N. Y. 556.)

The contract under which plaintiff has been allowed to recover was one to cover a period of seventeen years at least, and the learned trial court charged the jury that the plaintiff could not recover unless she established " a contract in accordance with that allegation of the complaint and supported by testimony which was to the effect that the contract alleged to have been made was a contract to take the output for the life of the patent." The promise claimed to have been broken by defendant was, therefore, void under the Statute of Frauds.

No other direct proof of Rhode's authority to bind the defendant was offered except the fact that he was vice-president and general manager of the defendant and as such had in the past purchased large quantities of rims, sometimes aggregating as high as 500,000 in a year. The record is devoid of proof that any such promise or contract as the plaintiff relies upon was ever communicated to the board of directors of the defendant, or acted upon by it.

The only testimony called to our attention by the respondent and claimed to have any tendency to show that Rhode consulted the directors of the defendant is to the effect that Rhode once told plaintiff that he had written the New York office about Larges' factory being built. But this falls far short of showing knowledge by the directors of any such promise as the plaintiff claims was made.

The learned trial court charged the jury as follows: " Mr. Rhode unquestionably had the right to order rims in accordance with the current needs of the corporation, without going to the board of directors, but he had no right, and it was beyond the scope of his authority to make a contract extending over a great number of years, or to order rims that were largely in excess of the reasonable demands of the company."

There was no exception to this instruction.

There is, in our opinion, no substantial evidence bearing on this subject of Rhode's authority except the proof that as general manager of defendant's plant and business he was authorized to make purchases to carry on the business. The verdict is unwarranted in view of the principle enunciated in the quoted portion of the charge.

The finding of the jury in favor of plaintiff establishing the existence of a contract between the two corporations binding the defendant to take rims at the rate of 750 a day until a certain contingency happened and in a greater quantity thereafter is contrary to the weight of the evidence.

The Johnson Rim and Parts Company, Inc., soon got into financial difficulties. The existence of the contract claimed by plaintiff would have been to the company an assurance of success, but nowhere in the minutes or records of the Johnson Company is there found the slightest reference to such a contract.

Although the output of the Johnson Company never got up to 750 rims a day attempts were made on behalf of the Johnson Company to obtain purchasers for the rim other than the defendant. On April 23, 1920, Hamilton Large wrote the Johnson Company's bank reporting prospects of selling 1,500 rims a day to each of two companies in Detroit, but making no reference to any outstanding contract with the defendant. At several meetings of the directors of the Johnson Company, attended by both Preston and Hamilton Large, the advisability of giving defendant a license to manufacture rims under the Johnson patent was discussed. The minutes of the company were kept for the most part by Mr. Hamilton Large. No one is shown by the minutes to have even suggested that this was unnecessary on account of the defendant's outstanding contract to purchase the Johnson Company's entire output. Finally in November, 1920, a written agreement was entered into between the Johnson Company and defendant licensing the defendant to make rims under the Johnson patent for its own use on wheels manufactured by it. When at a meeting of the directors of the Johnson Company Rhode was asked what the commitment of the defendant company was, a reply was given

" 5,000 rims," that being the remainder of the 11,000 rims ordered in writing and mentioned above. Hamilton Large was present and in no way contradicted this testimony.

All these facts as disclosed by the evidence and the conversations of Preston and Hamilton Large down to the time of the bankruptcy of the Johnson Company, taken in connection with the denials of Mr. Rhode of such a promise as is claimed by the plaintiff, viewed in the light of reasonable probabilities, outweigh the testimony of Preston and Hamilton Large on which the verdict must rest.

We find the verdict, therefore, contrary to the weight of the evidence.

It is unnecessary for us to pass upon other questions raised by the appellant. We have discussed this case upon the assumption that the contract was sufficiently definite and that the price of the rims was agreed upon, and that there was implied in the conversations between Rhode and Preston and Hamilton Large a promise on the part of the Messrs. Large that they would manufacture and deliver rims to the amount specified in the promise they attribute to Rhode, but we do not think it necessary now to pass upon the soundness of these assumptions, in view of the fact that we feel that the judgment should be reversed for the reasons hereinbefore stated.

The judgment and order should be reversed on the law and the facts, and final judgment granted dismissing the complaint, with costs.

All concur. Present — HUBBS, P. J., CLARK, SEARS, TAYLOR and SAWYER, JJ.

Judgment reversed on the law and facts, with costs, and judgment directed in favor of the defendant dismissing the complaint, with costs.