## SCHWARTZ v. UNITED MERCHANTS & MANUFACTURERS, Inc.
### No. 437.

Circuit Court of Appeals, Second Circuit.
July 9, 1934.

MANTON, Circuit Judge, dissenting.

Sutta & Frankel, of New York City (Emil Weitzner, of New York City, of counsel), for appellant.

Thornton Alexander, of Boston, Mass. (James H. Halpin and Kenneth M. Spence, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The action was for breach by the defendant, a corporation, of a contract between itself and the plaintiff. The defendant held a majority of the shares of two other companies, the Ashland Corporation and the United Rayon Mills, and apparently controlled their affairs; they were textile mills, the defendant was a holding company. The plaintiff had been made the selling agent of the Ashland Corporation, discharging his duties through a company called the Cayuga Silk Corporation which he had organized with one, Holden. The defendant's president, Loring, and its vice-president, Jewett, thought it would be advantageous to substitute another contract in the place of this, and long negotiations went on between them and their lawyer, Alexander, on the one hand, and the plaintiff and his lawyer, Frankel, on the other. Various drafts of a proposed contract were submitted and amended, but finally a form was agreed upon which the plaintiff signed and caused to be transmitted to Loring. As the case comes up, we may assume arguendo that Loring also signed it, and told the plaintiff that he could pick it up at any time when he called at Loring's office. A draft of it was in evidence, and as the case turns upon it, we must state it with a little detail. The parties agree to form a company with a capital of $5,000 of which the plaintiff is to contribute $2,250 and the defendant $2,750; this company is to issue 100 non-par shares, of which the defendant is to receive 55 (Class A), and the plaintiff 45 (Class B); each class to elect two directors. The defendant "agrees and warrants that it will cause the Ashland Corporation to enter into an agreement" by which the new corporation shall become for two years the exclusive selling agent for the Ashland company and for that part of the product of the Rayon Mill which is sold exclusively by the Ashland company. Commissions are fixed on the sales, and the new corporation's operating expenses are in any case to be guaranteed by the Ashland company. In addition the Ashland company is to pay a graduated percentage of the joint profits of itself and the Rayon company; 25% of the first $100,000, 30% of the next $50,000, 35% of the second $50,000, and 40% of all profits above $200,000. The defendant warrants that such an agreement has been approved by the directors of the Ashland company, and that its president is authorized to make such a contract. The defendant agrees to vote its A shares in the new company to give the plaintiff a salary of $38,000 for two years, and to elect him president; it guarantees the performance of this contract of employment; the new company is to take over a lease of one of the plaintiff's companies and its fixtures at their book value. The defendant repudiated the transaction, insisting that it had not made any contract, and the plaintiff sued. He alleged that Loring's admissions to him established the execution and delivery; that, as president, Loring had prima facie authority to make such a contract; and that if there were no written contract, there was an equivalent oral one. The defendant denied each of these positions and in addition alleged that the contract if ever made, had been rescinded. At the close of the plaintiff's case the judge dismissed the complaint and this appeal followed.

There is no evidence of any sort that the directors of the defendant had ever heard of Loring's and Jewett's negotiations with the plaintiff; certainly none that they knew that he meant to close on anything like the written draft upon which the plaintiff relies. Such a contract was by no means matter of course in any business, even assuming that the employment of an exclusive selling agent for a textile mill is a routine affair; itself a hardy assumption, for which there is not the least evidence in the record. Indeed this was not even a contract by a mill to employ its own exclusive selling agent; the defendant, by virtue of its holdings in two subsidiaries proposed to impose a selling agent upon them. It is true that the contract recites that

the directors of the Ashland company have already so resolved, and this is an admission against the defendant, if we suppose the contract to have been signed and delivered; but nothing of the sort appears as to the Rayon Mill. The exceptional character of this contract did not however stop there; for the defendant reserved more than half the profits of the agency to itself. Though a majority shareholder in the new company it was to contribute nothing to the services, so far as appears, but a trifling capital and a guarantee of the salary to the real selling agent, the plaintiff.· For this it might get more than fifteen per cent. of the earnings of the subsidiaries. We need not hold that this made it inevitably unlawful without the assent of the subsidiaries' minority shareholders; but certainly it was not a customary or usual transaction, even if the employment of an exclusive selling agent is such, or the employment of a selling agent for a subsidiary.

The law as to the prima facie authority of a president or other general officer of a corporation is not very clear. Unquestionably there has been a tendency of late to imply greater authority and to throw upon the corporation the duty of showing that in fact the directors have not authorized the particular powers exercised. The Court of Appeals of New York has indeed twice said without limitation that a president presumptively has any powers which the directors have authority to give him or could ratify, Patterson v. Robinson, 116 N. Y. 193, 200, 22 N. E. 372; Hastings v. Brooklyn Life Ins. Co., 138 N. Y. 473, 479, 34 N. E. 289; though the decisions cited do not support so far reaching a doctrine. In Oakes v. Cattaraugus Water Co., 143 N. Y. 430, 436, 38 N. E. 461, 26 L. R. A. 541, it appeared that the president had full charge of the business and the case really does not stand for the rule. In Watkins Salt Co. v. Mulkey (C. C. A.) 225 F. 739, our decision was to the contrary; but in Hotel Woodward v. Ford Motor Co. (C. C. A.) 258 F. 322, we accepted the presumption without limitation, though it appears from the later report of the same case (C. C. A.) 271 F. 625, that it was unnecessary to the decision. How far it was part of our ruling in Ransome Concrete Machinery Co. v. Moody (C. C. A.) 282 F. 29, is not clear. In the last three cases we were professing to follow New York law, and the Court of Appeals has more recently twice expressly decided that there were limitations on the doctrine. Heaman v. Rowell Co., 261 N. Y. 229, 185 N. E. 83; Powers v. Schlicht H. L. & P. Co., 23 App. Div. 380, 48 N. Y. S. 237, affirmed on opinion below, 165

N. Y. 662, 59 N. E. 1129. How far a similar ruling was involved in Bankers' Trust Co. v. International R. Co., 207 App. Div. 579, 202 N. Y. S. 561; Id., 239 N. Y. 619, 147 N. E. 220, and in Large v. Wire Wheel Corp., 223 App. Div. 134, 227 N. Y. S. 449; Id., 250 N. Y. 531, 166 N. E. 312, it is impossible to say, for the Court of Appeals did not write; but at least the opinions below assumed that not all contracts which the directors may authorize are presumptively within the president's authority. In Hardin v. Morgan Lithograph Co., 247 N. Y. 332, 338, 339, 160 N. E. 388, 390, although Hastings v. B. L. Ins. Co., supra, 138 N. Y. 473, 34 N. E. 289, was quoted, the presumption was limited to "such ordinary contracts as custom and the necessities of business would justify or require." The contract there at bar was not an unusual one; nor was that before the court in Twyeffort v. Unexcelled Mfg. Co., Ltd., 263 N. Y. 6, 188 N. E. 138, where the intimation was not justified that Pound, J., had intended in Hardin v. Morgan Lithograph Co., supra, 247 N. Y. 332, 160 N. E. 388, to adopt the unlimited form. The citation of Peck v. Dexter S. P. & P. Co., 164 N. Y. 127, 58 N. E. 6, in Hardin v. Morgan Lithograph Co., supra, shows that the president's authority does not in this regard differ from that of any other officer.

We conclude therefore that there is no absolute rule in New York that any contract which the president of a company may make, however out of the ordinary, throws upon the company the duty of showing that he was unauthorized. It is true that whatever powers are usual in the business may be assumed to have been granted; but the presumption stops there, as much in the case of a president as of any other officer, though naturally in degree they may greatly differ. If so, it seems to us apparent that if any contract needed the express authority of the directors it was this. Not only did it commit the subsidiaries to an exclusive selling agent of the holding company's choosing for two years, a thing most vital to their welfare; but on its face it was a violation of the defendant's obligation to the minority shareholders of those companies, whose earnings were to be diverted to the defendant upon an insufficient consideration. Hyams v. Calumet & Hecla Mining Co., 221 F. 529, 537 (C. C. A. 6); Wheeler v. Abilene Nat. Bank, 159 F. 391, 393–395, 16 L. R. A. (N. S.) 892, 14 Ann. Cas. 917 (C. C. A. 8); Heim v. Jobes, 14 F.(2d) 29, 35 (C. C. A. 8). Surely it would be a curious doctrine which assumed without evidence that a president might bind his cor-

poration to such a questionable undertaking, which might involve it in litigation, if indeed it was valid at all. No desire to free plaintiffs from being obliged to fish in their enemies' water ought so far to fly in the face of probability; nothing could justify such a procedure except the express shifting of the duty of going forward upon the party holding the negative.

Judgment affirmed.

MANTON, Circuit Judge, dissents in separate opinion.

MANTON, Circuit Judge (dissenting).

On the statement of facts recited in Judge HAND'S opinion, a jury question was presented as to whether a contract was made and whether or no there was a breach of such contract. Such a contract, made as stated, presumptively had the authority of its maker, the corporation appellee. Hotel Woodward Co. v. Ford Motor Co., 258 F. 322 (C. C. A. 2); Hastings v. Brooklyn Life Ins. Co., 138 N. Y. 473, 479, 34 N. E. 289. When the case of Hotel Woodward v. Ford was before us on the second appeal (271 F. 625, 629) we said:

"This brings us to the question of Robertson's authority to sign the letter of August 31, 1916. Klingelsmith, the vice president, after a conversation with Green on the subject, sent him up to Robertson's office on the same day with the draft lease 'to fix the matter up.' At least so Green testified; Klingelsmith merely saying that he had referred the matter to Robertson. Klingelsmith had certainly charge of the whole negotiation, and Henry Ford, the president, and Edsell Ford, the secretary, were also conversant with it. This established a prima facie authority in the managing officers to authorize Robertson to do what he did."

The facts there are very much like those at bar. There was nothing ultra vires in the action of the appellee in making the contract. The contract warranted that the agreement had been approved by the directors of the Ashland Corporation and that its president was authorized to make such a contract. The contract was beneficial to the appellee corporation and was made by the president within the apparent scope of his authority. Union Indemnity Co. v. Home Trust Co., 64 F.(2d) 906 (C. C. A. 8); Bijur Motor Lighting Co. v. Eclipse Machinery Co., 243 F. 600 (C. C. A. 2). If the jury found the contract existed and was breached, there should be a recovery.

I dissent.