## (December 27, 1979)

■ NEW YORK METRO CORPORATION, Respondent, v CHASE MANHATTAN BANK, N. A., Appellant.—Judgment, Supreme Court, New York County, entered March 31, 1978, in favor of the plaintiff, in the amount of $144,000 and interest and costs, affirmed with costs. Kielman Schuddekopf, the president of New York Metro Corporation (Metro), opened an account in the name of Metro at the 34th Street branch of the Chase Manhattan Bank, N. A. Schuddekopf owed a personal debt to Kirkeby-Natus in the amount of $400,000. In order partially to satisfy that debt, he arranged for Kirkeby-Natus to loan $350,000 to Metro. The loan was payable in two checks: one in the amount of $200,000, and the other in the amount of $150,000. Schuddekopf was to take $144,000 of that money towards repayment of his personal debt to Kirkeby-Natus. When Schuddekopf received the $200,000 check, he went to the Chase Manhattan Bank's 34th Street branch to open a corporate account for Metro. He then deposited the $200,000 check and simultaneously withdrew a check issued by Chase in the amount of $144,-000. The issue resolved against the defendant, Chase Manhattan Bank, by the jury verdict was that Schuddekopf exhibited no authority in the form of a corporate resolution to warrant the opening of the corporate account for Metro. Chase claimed that this document was obtained by them but inadvertently destroyed. The finding of fact by the jury that there was no corporate resolution removes any insulation or protection that the bank may have had (see, e.g., Banking Law, § 9). Chase, by failing to adhere to reasonable banking practices, should be held liable for its error (see, e.g., *Tonelli v Chase Manhattan Bank, N. A.,* 41 NY2d 667). Concur—Lane, Lupiano and Ross, JJ.

Murphy, P. J., and Silverman, J., dissent in a memorandum by Silverman, J. as follows: The judgment of the Supreme Court in plaintiff's favor should be reversed and a new trial ordered. In our view the basic error at trial was that the Trial Justice too narrowly defined the issue for the jury's determination, submitting to them simply a special verdict on the question as to whether when the account was opened there was on file with the bank a corporate resolution of plaintiff New York Metro Corporation authorizing its president Mr. Schuddekopf to draw on the account. What the jury should have been asked was whether Mr. Schuddekopf had authority to draw on the account, whether or not there was a corporate resolution on file. Although the action originally began as an action for conspiracy, fraud, etc., it finally evolved into an action on the contract of deposit, i.e., an action by the depositor to recover the balance of the account or the amount of a disputed debit item, the dispute being whether a certain $144,000 payment made by the bank and charged to the depositor at the direction of the depositor's president was an authorized charge. This in turn depended upon whether the president had authority—actual or apparent—vis-à-vis the bank, to make the direction. It is true that such authority is usually evidenced by a corporate resolution. But that cannot be the exclusive determinant of authority. To begin with, the jury found in this case—despite contemporaneous documentary evidence of the existence of such a resolution, but the resolution itself not being located—that there was no corporate resolution on file. It cannot be that where a corporation account is opened without a corporate resolution on file, that the bank can just keep the money unless and until a corporate resolution is filed. If the bank pays out money on the direction of an officer of the depositor who has authority to give that direction, the bank is entitled to charge the depositor's account. In the present case, the officer who concededly gave the direction, in writing, was the only person named on the signature card. He was the president of the depositor corporation; as such he had prima facie authority to do any act which the board of directors could authorize. (Hardin v Morgan Lithograph Co., 247 NY 332, 338; Oakes v Cattaraugus Water Co., 143 NY 430, 436.) He was also the sole general partner of the partnership which was the sole stockholder of the plaintiff corporation. These are relevant factors to be considered in determining the ultimate question of whether he had authority to direct the bank to make a payment to be charged against the corporate depositor. The presence or absence of a corporate resolution is merely some evidence on the ultimate question of authority. Questions of whether the bank should have known or suspected that the money was being used to pay the personal debt of the president of the depositor no doubt bear on whether the bank could rely on the president's authority. But these questions were not submitted to the jury. Analysis of the factual economic situation indicates some interesting ramifications. For one thing, it seems highly likely that this judgment against the bank for $144,000 (plus interest) represents a sum of money that plaintiff never had, and was never intended to have. Although in form the transaction with the lender Kirkeby-Natus involved a payment of $350,000 to plaintiff corporation, it is at least arguable (and this was plaintiff's theory) that this money was received from Kirkeby-Natus on the condition and with the understanding that out of it Mr. Schuddekopf, the president of plaintiff corporation, would immediately cause to be repaid to Kirkeby-Natus $144,000 (to be applied against the president's indebtedness to Kirkeby-Natus). Indeed, Kirkeby-Natus did not draw one check for $350,000; rather it drew two checks to the order of plaintiff corporation, one for $200,000 and one for $150,000; in the

first instance it delivered to Mr. Schuddekopf only the $200,000 check; he deposited it in Chase Manhattan Bank, N. A. and obtained from Chase a cashier's check for $144,000 to the order of Kirkeby-Natus which he delivered to Kirkeby-Natus; only when he delivered the $144,000 check did he receive the $150,000. It is thus clear that plaintiff corporation was never to have the $144,000, and that Kirkeby-Natus never let go of or advanced the whole $350,000 but only $350,000 less $144,000. As is true of most modern financial transactions involving substantial sums of money, no currency physically changed hands; rather the transactions took the form of debits and credits on the books of the bank and of the parties and financial instruments reflected therein. Consideration of the obvious debits and credits illuminates the true nature of the transaction. We may disregard the $206,000 ($350,000 less $144,000) which represents the apparently undisputed loan to plaintiff corporation. Considering the disputed $144,000, on the day of these transactions, plaintiff corporation's newly opened bank account was credited (by the deposit) and immediately debited (by the cashier's check) for this $144,000—a wash transaction. Kirkeby-Natus' cash account was debited (by the advance) and credited (by Kirkeby-Natus' receipt of the cashier's check) for this $144,000—again a wash transaction. It is when we consider Kirkeby-Natus' loans receivable account that we see what truly happened: the loan account to plaintiff corporation was increased by $144,000 and the loan account to Mr. Schuddekopf was reduced by $144,000, i.e., Mr. Schuddekopf's $144,000 obligation was transferred to plaintiff corporation; that was the whole point of the charade. The obvious remedy for this wrong is to treat the transfer as a nullity; or to recognize that the $144,000 was not a true part of the loan to plaintiff corporation; and that is the effect of the trial court's judgment against Kirkeby-Natus. (Plaintiffs were granted judgments against both Kirkeby-Natus and Chase for $144,000, with interest, with a provision that plaintiff could not collect twice. Plaintiffs have since settled with Kirkeby-Natus.) It may be that the bank is also liable on some tort theory as a joint tort-feasor; but that claim was dismissed by the trial court and was in any event not submitted to the jury. Instead, only the contract claim on the contract of deposit survived. And that claim was submitted on an erroneously restricted issue.