Sylvester J. Liebermann, Respondent, *v.* Princeway Realty Corp., Appellant.

First Department, November 29, 1962.

*Samuel Gottlieb* of counsel (*Harry Giesow* and *Stuart F. Cartoon* with him on the brief; *Sinsheimer & Sinsheimer,* attorneys), for appellant.

*Stanley J. Mayer* for respondent.

*Per Curiam.* Plaintiff has been awarded a verdict of $25,000 in an action on a promise to the plaintiff made in July, 1954 by defendant through its president Samuel Frindel, Jr., to the effect that defendant would pay said sum to plaintiff upon the sale of premises owned by defendant known as and by the street number 568–578 Broadway, City and County of New York. The property was sold on November 4, 1960 and this action was commenced on November 16, 1960.

Prior to his death in 1952 Elias A. Cohen dominated several corporations including S. Frindel, Jr., Inc., and defendant. Cohen's sister, Estelle, owned the capital stock of S. Frindel, Jr., Inc. Defendant's capital stock was nominally in the name of Estelle. For some years prior to the death of Cohen in 1952, plaintiff was employed by S. Frindel, Jr., Inc. The latter corporation operated and managed various properties; included among them were premises 568–578 Broadway, owned by defendant. Defendant paid the Frindel corporation the usual management fee.

Plaintiff, a licensed real estate broker, devoted most of his time in the management of defendant's said property. Subsequent to the death of Cohen, plaintiff was under the direction of Samuel Frindel, Jr., president of the Frindel corporation. Mr. Frindel was the husband of Estelle, the sister of Cohen.

After Cohen's death his estate asserted ownership of defendant's capital stock. The dispute between Cohen's sister and his estate was negotiated to a settlement whereunder the ownership of said stock was equally divided between them.

Plaintiff's testimony is that during July, 1954 he had a conversation with Mr. Frindel regarding his tenure with the Frindel corporation. During 1954 Mr. Frindel was also president of defendant. Plaintiff then stated that his weekly salary of $75 was inadequate and he desired an increase. Mr. Frindel informed plaintiff that the income of the Frindel corporation was limited and further '' as president of the Princeway Realty Corp. that owns 568–578 Broadway, and my wife owns all of its stock, I want you to continue to work on it, do the same good job you have been doing, and when the property is sold, I will see that you are given $25,000 for all the good work that you have been doing, and we want you with us.'' Mr. Frindel died in 1956.

Plaintiff was not in the employ of defendant during July, 1954. It was not until 1958 that defendant contributed $25 towards the weekly salary of plaintiff because of additional management duties assumed by plaintiff relating to premises other than 568–578 Broadway.

Plaintiff does not allege and the record disproves a promise or ratification by defendant's board of directors of the promise relied on. Plaintiff's right to recover rests entirely upon the authority of Mr. Frindel as president of defendant to bind defendant without the express consent or ratification of its board of directors. (*Heaman* v. *Rowell Co.*, 261 N. Y. 229, 232.) Defendant's president had the apparent power to '' make such ordinary contracts as custom and the necessities of business would justify or require ''. (*Hardin* v. *Morgan Lithograph Co.*, 247 N. Y. 332, 339.) It does not appear on this record that the gratuitous promise here involved to one not in its employ was either customary or necessary in defendant's business; contrariwise, it was unusual and extraordinary. In the absence of express authority by its board of directors the promise was not binding on this defendant. (*Noyes* v. *Irving Trust Co.*, 250 App. Div. 274, 276, affd. 275 N. Y. 520; see, also, *Heaman* v. *Rowell Co., supra; Wen Kroy Realty Co.* v. *Public Nat. Bank & Trust Co.*, 260 N. Y. 84; *Carney* v. *New York Life Ins. Co.*, 162 N. Y. 453; *Bankers Trust Co.* v. *International Ry. Co.*, 207 App. Div. 579, 587, affd. 239 N. Y. 619; *Schwartz* v. *United Merchants & Mfrs.*, 72 F. 2d 256 [L. HAND, C. J.].)

If we did not dismiss the complaint, we would order a new trial by reason of the erroneous exclusion of material evidence.

The exclusion of evidence as to the custom and practice of defendant relative to severance pay and bonuses was prejudicial error, particularly in the light of the comment made by plaintiff's counsel in summation as to what he conceived to be the purpose and significance of the defendant's tender to the plaintiff of its check for $1,000 upon termination of plaintiff's employment.

The judgment should be reversed, on the law, and the complaint dismissed, with costs to defendant-appellant.

RABIN, J. P. and EAGER, J. (dissenting in part). We agree that the judgment for the plaintiff should be reversed. But we would order a new trial and we dissent insofar as this court would dismiss the complaint.

The dismissal of the complaint is predicated on the ground that S. Frindel, Jr., as president of the defendant corporation, had no authority to bind it to the contract claimed by plaintiff. In our opinion, however, the question of authority was one of fact for the jury.

The plaintiff, a licensed real estate broker, was an employee of S. Frindel, Jr., Inc., but, as such employee, one of his principal duties was the management of the real property of the defendant corporation. The two corporations were closed corporations with interlocking officers and directors. Mr. Frindel was president of both corporations. And, when he made the alleged promise to the plaintiff that the defendant would pay him $25,000 if he continued on the job until its certain real property was sold, the board of directors of the defendant consisted of its president (Mr. Frindel), his wife and her brother. His said wife was then the treasurer of the defendant and the record and claimed owner of all of its stock, and she testified that Mr. Frindel " ran the affairs " of the defendant.

On the basis of these salient facts, we readily conclude that there was here a jury question as to whether or not the defendant's president had the authority, express or implied, to bind the defendant to the alleged contract. (See *Oakes* v. *Cattaraugus Water Co.,* 143 N. Y. 430; *Twyeffort* v. *Unexcelled Mfg. Co.,* 263 N. Y. 6; *Rosenkranz* v. *Schreiber Brewing Co.,* 287 N. Y. 322; *Grossman* v. *Redi-Food Co.,* 2 A D 2d 670; 19 C. J. S., Corporations, §§ 994, 1034.) In any event, the jury could have found that the contract was one made in the interests of and for the benefit of the defendant and within the apparent authority of its president, and, the rights of creditors not being involved, that the defendant was estopped from denying the authority of its president to make it. (12 N. Y. Jur., Corporations, §§ 777,

778; 19 C. J. S., Corporations, §§ 996, 1011. Also *Wen Kroy Realty Co.* v. *Public Nat. Bank & Trust Co.*, 260 N. Y. 84, 91, 92.)

We do, however, agree with the majority that the record discloses the erroneous exclusion of material evidence. We are further of the opinion that there was an inadequate definition and presentation of the issues to the jury.

There was here a serious question as to whether or not there was a meeting of the minds of the parties on the essential terms of the alleged contract. " It is elementary in the law that, for the validity of a contract, the promise, or the agreement, of the parties to it must be certain and explicit and that their full intention may be ascertained to a reasonable degree of certainty." (*Varney* v. *Ditmars,* 217 N. Y. 223, 228.) Therefore, in order for the plaintiff to recover, it was necessary that he establish an offer and promise which was definite and certain as to its terms. The promise of the defendant would not ripen into an enforcible contract with the plaintiff unless it was clearly understood what the plaintiff was to do on his part. It was necessary that there be a definite understanding, as alleged, that the plaintiff was to continue in the employ of S. Frindel, Jr., Inc., and to handle the management of defendant's property until its sale. If it was so understood, then the plaintiff's services would constitute a sufficient acceptance and consideration for defendant's alleged promise. (See 1 Corbin, Contracts, § 137, pp. 426–427.) On the other hand, if it was not so understood, then there was no binding contract.

It is true that the trial court did, in a general way, correctly charge the law of contracts applicable to the situation here, but, particularly in view of defendant's exceptions and requests to charge, we conclude that the court should have been more specific in defining and explaining the issues to the jury. We are not satisfied, on the basis of the instructions given, that the jury would know that it was necessary for the plaintiff, in order to establish a binding contract, to show that it was understood between the parties that plaintiff was to work until the property was sold or until, without fault on his part, his services were terminated.

In the interest of justice, there should be a new trial.

McNALLY, STEVENS and BERGAN, JJ., concur in *Per Curiam* opinion; RABIN, J. P., and EAGER, J., dissent in part, in opinion.

Judgment reversed, on the law, and the complaint dismissed, with costs to defendant-appellant.