■ COLLISION PLAN UNLIMITED, INC., et al., Respondents, v BANKERS TRUST COMPANY, Appellant. — In an action to recover, *inter alia,* for money had and received, defendant appeals from an order of the Supreme Court, Nassau County (Burke, J.), entered August 30, 1982, which denied its motion to dismiss the complaint. Order reversed, on the law, with costs, motion granted and complaint dismissed. Special Term erred in declining to grant the defendant bank's motion to dismiss the complaint. The complaint seeks to recover $140,341.09 for, *inter alia,* money had and received, as well as $1,000,000 for slander of title and specified sums for attorney's fees and punitive damages. According to the complaint and papers submitted on defendant's motion, plaintiff corporation was the fee owner of a residence in Great Neck, New York. Plaintiff Marie Neu was its sole shareholder and director. Her nonparty spouse, Nicholas Neu, had borrowed money at allegedly usurious rates from one Richard Albert, also a nonparty. Albert's company, M. D. R. Check Cashing, Inc., had overdrawn its account with defendant in the amount of $140,341.09. Defendant discovered the overdraft and demanded repayment. Using threats of physical violence, Albert allegedly compelled Nicholas Neu to execute a second mortgage on the residence to secure Albert's promise to repay the defendant. Nicholas, however, had no interest in the residence to be used as collateral and had no authority to act on behalf of the plaintiff corporation. Nevertheless, the men proceeded to execute a written agreement with defendant under which Nicholas, purportedly as president of plaintiff corporation and under its corporate seal, executed a mortgage on the residence and a guarantee. A certificate authenticating a corporate resolution authorizing such acts was submitted with Albert's signature as secretary of plaintiff corporation. Subsequently defendant commenced an action in foreclosure and plaintiff corporation satisfied the debt in order to clear title to the residence for its sale to a third party. In the stipulation of agreement relating to this latter transaction, however, dismissal of the foreclosure action was without prejudice to plaintiffs' right to bring a later action against defendant. The instant

complaint states that the plaintiffs had neither authorized nor ratified the mortgage and guarantee, that defendant knew or should have known that Albert had loaned money to Nicholas Neu at usurious rates, that defendant's claim to retention of the $140,341.09 was predicated on an "assignment", void for usury, of Albert's rights against Nicholas Neu, and that the interest charged by defendant on the repayment note was itself usurious. Defendant moved to dismiss the complaint for failure to state a cause of action, upon documentary evidence, and for failure to join Nicholas Neu as a necessary party. The affidavit of the officer who represented the defendant in the transaction challenged by the complaint was accompanied by a number of documents demonstrating the regularity of the transaction. As explained by the officer, the residence was apparently the home of the Neus. Nicholas Neu and Albert, accompanied by legal counsel, met with him and offered to hypothecate the residence, which was owned by Nicholas Neu's family-controlled corporate shell. The defendant agreed to repayment of the overdraft by Albert's company on an installment basis as secured by a corporate guarantee and mortgage on the residence executed on behalf of plaintiff corporation by Nicholas Neu as its president. The defendant had, however, investigated the proposed collateral and found that Nicholas Neu had previously executed mortgages on the same residence in the same fashion on behalf of the plaintiff corporation. Not until Nicholas and Marie Neu alleged the fact as a defense in their answer to the defendant's foreclosure action did the defendant become aware of Nicholas Neu's lack of actual authority to act on behalf of the plaintiff corporation. In opposing the motion, plaintiffs elaborated upon their theory that the defendant's acceptance of the corporation's guarantee and mortgage was in bad faith. Plaintiffs annexed two internal memoranda drafted by the bank officer, the first dated the day after the initial meeting with Nicholas Neu and Albert and the second the day of closing. The first memorandum recapitulated the discussion between the bank officer, Albert, his counsel and Nicholas Neu. After stating the facts, the officer wrote: "Strictly as a credit *cum* business judgment, I have approved the settlement proposal noted above. There remains, of course, many tantalizing questions, the answers to which may be best left unsought. Where, for example, was the final resting place of the $140,000.00? On the advice of counsel, Albert was appropriately reticent in that regard: perhaps, in an outpouring of charity occasioned by the Yuletide spirit, a substantial anonymous donation has been made to the *New York Times* Neediest Cases. I doubt we shall ever know. And what of the mysterious Mr. Neu? Other than his oft professed and eminently praiseworthy desire to help a friend in need, there is really no accounting for his willingness to pledge his home to rescue Mr. Albert from the consequences of the latter's prodigal check cashing activities. Neu's only comment when asked — which he offers quietly from the side of his mouth — is that '...I just want to help Richie'. In any event, on Dec. 18 we shall know whether we have collateral (in paper equity, at least, sufficient to cover the debt in a dollar-for-dollar basis) or a $140M loss." In the second memorandum, he wrote: "Further to my Dec. 13 memorandum, the contemplated closing was consummated this morning * * * The *dramatis personae* previously noted * * * were in attendance. The fee owner of the residence at 46 Sunset Road, Kings Point (Collision Plan, Inc.) granted BTCo a junior mortgage with the requisite supporting documents (resolution and guaranty). A Letter Agreement embracing the repayment terms outlined in my prior memorandum was also executed. Mr. Neu, the Good Samaritan, asked that payment invoices be rendered to another of his corporate vehicles * * * I will obtain a more formal exterior appraisal of the property after which only time will tell as to payments." Special Term, after reading the papers and documents, concluded that the complaint stated a cause of action

and ruled that the documentary evidence was "inconclusive and evidentially insufficient to warrant" dismissal of the complaint. The court further denied that branch of defendant's motion which was to dismiss the complaint based on plaintiffs' failure to join Nicholas Neu, "without prejudice to a motion to join Richard [*sic*] Neu as a party" or the commencement of a third-party action. Special Term should have granted the motion to dismiss. On its face, the complaint fails to state any cause of action relating to usury in the defendant's repayment agreement itself or to defendant's knowledge of any duress applied to Nicholas Neu in consenting to the agreement. The defendant was under no duty to investigate the donative intent or consideration behind Nicholas Neu's consent to hypothecating his residence and executing a corporate guarantee of the repayment agreement. That defendant's officer entertained suspicions on this score and expressed them in an ironic tone in his memoranda is irrelevant. Although the complaint states a good cause of action by denying Nicholas Neu's actual authority to execute the agreement, mortgage and guarantee, defendant's unrebutted documentary evidence of similar prior mortgages established his *apparent* authority to act on plaintiff corporation's behalf. Accordingly, the order denying defendant's motion to dismiss the complaint must be reversed and the motion granted. Titone, J. P., Lazer, O'Connor and Boyers, JJ., concur.