GENERAL INFORMATION ASSOCIATES PARTNERSHIP, RAYMOND AND IRMA ZIFF, PARTNERS OTHER THAN THE TAX MATTERS PARTNER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; GENERAL INFORMATION ASSOCIATES 3, WILLIAM H. CHISHOLM AND ALICE J. CHISHOLM, PARTNERS OTHER THAN THE TAX MATTERS PARTNER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
General Information Assoc. Partnership v. Commissioner
Docket Nos. 18405-90, 20111-90
United States Tax Court
T.C. Memo 1992-583; 1992 Tax Ct. Memo LEXIS 611; 64 T.C.M. (CCH) 957; September 29, 1992, Filed *611 Orders denying movants' motions for partial summary judgment will be issued. For Petitioners in docket No. 18405-90: Babcock MacLean and Robert B. Gluckman. For Petitioners in docket No. 20111-90: Mark H. Berliant and Thomas C. Rink. For Participants Seung C. Karl, Choong K. Kim, Moon K. Yoon, Eugene M. Rosol, Newton B. Schwartz, P.C., Robert P. Wiese, Richard J. Klamper, Walter S. Kawecki, Michael V. Raisor, Ivan Gingerich, Fenton Gingerich, Charles H. Scruggs, Loubess, Inc., and Norma Rosenblatt in docket No. 18405-90: Thomas E. Redding. For Participants Mary Lee Harrell, Marshall Harrell III 1980 Trust, M.A. Harrell C/F M.A. Harrell III UGMA,and Marshall A. Harrell, Esq. in docket No. 18405-90: Linda S. Paine. For Participants E. Dennis and Katherine Christie, M. Warner and Patricia Westland, Norman P. and Joan E. Rounds, and Timonthy and Mary McMullen in docket No. 20111-90: James A. Halpin and George V. Chesteen. For Respondent: William H. Stoddard III and Bruce M. Wilpon. BEGHE
BEGHE
MEMORANDUM OPINION BEGHE, Judge: Respondent issued Notices of Final Partnership Administrative Adjustment (FPAA) for the taxable year 1983 for two partnerships: General Information Associates *612 (GIA) and General Information Associates 3 (GIA3). Petitioners and Rule 245 participants (movants) have moved for partial summary judgment under Rule 121. [1] Movants contend that the period of limitations expired before respondent issued the FPAAs. Respondent argues that there are disputed issues of material fact that make summary judgment inappropriate. Because we agree with respondent, we will deny the motions for partial summary judgment. Background
These disputes turn on whether the person who signed consent forms used to extend the period of limitations for assessment of tax on partnership items with respect to all partners was authorized to do so. GIA and GIA3 are New York limited partnerships, formed in December 1981. They adopted the calendar year as their annual accounting period. They are part of a group of computer equipment *613 leasing partnerships known as Madison Equipment, which were promoted by Barry Trupin. Trupin was the original sole general partner of both partnerships. In June and September 1983, Trupin assigned his general partnership interests in GIA and GIA3, respectively, to RRI XX Management Corp (RRI). RRI is the tax matters partner (TMP) for the partnerships' 1983 taxable years. On the dates relevant to this case, RRI was a wholly owned subsidiary of Paragon Leasing Corp., a Delaware corporation. Paragon was a wholly owned subsidiary of Rothchild Reserve International, Inc., another Delaware corporation. Rothchild was wholly owned by Trupin as trustee of a trust for the benefit of certain members of his family. Trupin, Rothchild, RRI, GIA, and GIA3 all maintained offices at 888 Seventh Avenue, New York City. Trupin was chairman of the board and chief executive officer of Paragon and Rothchild. Resondent alleges Trupin was president of RRI; movants dispute that allegation. [2]
*614 A Form 872-O, Special Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership, extends, until 90 days after its termination by either party, the time for respondent to issue an FPAA. In December 1986, Trupin signed two Forms 872-O covering taxable year 1983, one naming GIA and the other naming GIA3 as the partnership that agreed to the extension of the period of limitations. The forms were mailed back to respondent, but respondent did not countersign and return the forms until 2 months thereafter. The preprinted instructions following the signature lines on the Forms 872-O state: The partnership may restrict the authority of any partner(s) to sign this consent by notifying the Service in writing. In this event, please attach a copy of the notification. No such restriction appears on the record. The Form 872-O instructions also say: The Tax Matters Partner of the partnership in which the item arose (or any person authorized by the partnership in writing) may consent to extend the period of limitations for all partners. If the person signing this consent is not the Tax Matters Partner, sign in the space entitled "Authorized Representative Sign *615 Here" and attach a copy of the written authorization from the partnership. Trupin signed the forms on the line provided for the signature of the TMP, not on the line for the signature of an "Authorized Representative". Trupin's signatures were not accompanied by a description of title or any other indication that he was signing as an agent for the corporate TMP. No written authorization from the partnership, authorizing Trupin to sign the forms, was attached to either form. RRI's name does not appear on either form. In January 1987, the month after Trupin signed the GIA and GIA3 Forms 872-O, Trupin signed a Form 872-O for the 1983 taxable year naming General Data Associates as the partnership for which the period of limitations was to be extended. General Data Associates is, like GIA and GIA3, part of the Madison Equipment group of partnerships. Below Trupin's signature on the General Data Associates Form 872-O appears in handwritten block letters, "By Barry Trupin, President RRI XX Management Corp". The Commissioner's authorized designee countersigned the form on the same day Trupin signed it. [3]
*616 In February 1987, prior to expiration of the period of limitations specified by section 6229(a) with respect to the 1983 taxable year, the Secretary's authorized designee countersigned the GIA and GIA3 Forms 872-O. The record does not indicate to whom respondent returned executed copies of the forms. Respondent has submitted the affidavits of respondent's revenue agent, Peter Contard. Contard's affidavits state that Trupin told him by telephone, prior to execution of the GIA and GIA3 forms on behalf of the Secretary, that Trupin was authorized to sign the forms on behalf of RRI. Respondent contends that Trupin was authorized to sign the forms; movants disagree. In April 1990, via certified mail, respondent sent RRI, as tax matters partner for the partnerships, FPAAs relating to the GIA and GIA3 partnerships' 1983 taxable years. RRI has not contested the FPAAs. Neither respondent nor RRI has ever terminated the consents to extend the period for assessment. RRI has never challenged the validity of the Forms 872-O. Discussion
A party is entitled to summary judgment when there are no genuine issues of material fact and a decision may be rendered as a matter of law. Jacklin v. Commissioner, 79 T.C. 340, 344 (1982). *617 The burden is on the moving party to show that it is entitled to summary judgment. Adickes v. Kress & Co., 398 U.S. 144, 157 (1970); Gulfstream Land & Development Corp. v. Commissioner, 71 T.C. 587, 596 (1979). The party opposing the motion is afforded the benefit of all reasonable doubt, and all facts in the record must be viewed in the light most favorable to the opposing party. Adickes v. Kress & Co., supra at 157. A taxpayer raising a statute of limitations defense has the burden of producing evidence that respondent acted after the expiration of the normal 3-year period of limitations. Adler v. Commissioner, 85 T.C. 535, 540 (1985). There is no dispute that the FPAAs were issued after the normal expiration date. If an FPAA is issued after the normal period of limitations, respondent has the burden of producing evidence that the period of limitations had not expired prior to the issuance of the FPAA. Adler v. Commissioner, supra. This burden may be discharged by introducing into evidence a consent, "valid on its *618 face", to extend the period of assessment through the date the FPAA was mailed to the partnership. Id. at 541; Concrete Engineering Co. v. Commissioner, 19 B.T.A. 212 (1930), affd. 58 F.2d 566 (8th Cir. 1932). Movants argue that neither Form 872-O signed by Trupin is valid on its face because Trupin's signatures were not accompanied by a statement of his authority to sign on behalf of the TMP, and in fact the name of the TMP does not appear anywhere on either form. Movants therefore argue that respondent cannot discharge the burden of production, and that they are entitled to judgment as a matter of law. We agree with movants that the absence of even the name of the TMP (let alone an accompanying statement or other evidence of Trupin's authority to sign the forms) from both forms calls into question whether each form is valid on its face. That, however, is a question we need not resolve. We have never held that the only way respondent can discharge the burden of production is by introducing a Form 872 that is valid "on its face". The "valid on its face" test describes the minimum amount *619 of evidence that respondent must submit to discharge the burden of production in the usual case. See, e.g., Adler v. Commissioner, supra at 541; Concrete Engineering Co. v. Commissioner, supra at 221-222. We see no reason why the burden cannot be discharged with additional admissible evidence, such as evidence that the consents are in fact valid because the signer had authority to sign and signed in his representative capacity. See Griffith v. Commissioner, supra.
Movants argue that, in any event, respondent cannot show the validity of the Forms 872-O executed by Trupin for GIA and GIA3, either because Trupin was not president of RRI or because his signature failed to state his representative capacity. We first deal with the question of Trupin's authority. Respondent has submitted affidavits of the revenue agent responsible for preparing the Forms 872-O. The agent states that Trupin told him he was executing the Forms 872-O on behalf of, and as an authorized agent for, the TMP. It appears that the TMP is a corporation controlled by Trupin, and that before Trupin transferred *620 his general partnership interests to RRI, he was the TMP, by default if not by designation. Sec. 6231(a)(7). In the month preceding respondent's acceptance and execution of the Forms 872-O in issue here, Trupin had executed and respondent had countersigned another Form 872-O also affecting the 1983 taxable year of another Madison Equipment partnership; Trupin apparently signed that form on behalf of RRI as its president. Thus, on the date respondent accepted the Forms 872-O for GIA and GIA3, respondent had reason to believe Trupin was the president of RRI. Notwithstanding movants' contrary evidence, respondent has presented enough evidence to put in dispute the factual issue of whether Trupin was president of RRI. If Trupin was president, it is likely that he had authority to sign. A Form 872 is not a contract, but principles of contract law are instructive. Woods v. Commissioner, supra at 780. Under New York law: The president [of a corporation], as managing agent, may, in the absence of restrictions, make such ordinary contracts as custom and the necessities of business would justify or require. The authority of the president, his apparent power to make or ratify *621 the contract in question, may be presumed. * * * [Hardin v. Morgan Lithograph Co., 160 N.E. 388, 390 (N.Y. 1928); citations omitted.] See also Liebermann v. Princeway Realty Corp., 233 N.Y.S.2d 1001, 1003 (App.Div. 1962), affd. 195 N.E.2d 57 (N.Y. 1963); American Express Co. v. Lopez, 340 N.Y.S.2d 82, 83 (Civ. Ct. 1973). [4] Under New York law, we may presume that signing a Form 872-O was within Trupin's authority as president, and the burden would be on movants to show that such an act was unusual and outside the scope of Trupin's duties. See Hardin v. Morgan Lithograph Co., supra.Movants have not yet introduced such evidence, and respondent has not conceded the point. Obviously, the only way a corporate TMP can sign a consent to extend the period of limitations is by the hand of an authorized agent, whose authority may be express, implied, or apparent. See Three G Trading Corp. v. Commissioner, T.C. Memo. 1988-131; Goldenberg v. Bartell Broadcasting Corp., 262 N.Y.S.2d 274 (Sup. Ct. 1965). *622 [5] It is at least a question of fact whether Trupin, if he was president of RRI, had authority to sign the Forms 872-O. [6]
*623 We now reach movants' final argument, that Trupin's signature, which did not state that he was signing as president of RRI, was ineffective to extend the period of limitations with respect to all the partners on behalf of RRI. As we stated in Sanderling, Inc. v. Commissioner, 66 T.C. 743, 753 (1976), affd. in part and revd. on another issue 571 F.2d 174 (3rd Cir. 1978), the mere fact that an agent who was authorized to sign a document (in that case, a power of attorney) failed to indicate on the document that he was signing in a representative capacity does not give rise to a conclusive presumption that he acted in other than his correct representative capacity. See also Three G. Trading Corp. v. Commissioner, supra.
Drawing all reasonable inferences in favor of respondent, there are at least three open questions: (1) Was Trupin president of RRI when he signed the forms; (2) was Trupin authorized, actually or by implication, to sign the forms; and (3) did Trupin sign in his representative capacity? If the preponderance of the evidence introduced at trial requires a "no" answer to each *624 of these questions, there will be the further question of whether Trupin had apparent authority to sign the forms on behalf of RRI with respect to all the partners. Movants in docket No. 18405-90 assert that respondent will need "divine intervention" to prevail. All respondent needs is credible evidence and, although the record at this point in the proceedings is somewhat spotty, there is evidence in the record that would support a finding in respondent's favor on each of these questions. We therefore do not conclude that the consents were ineffective. Because movants have failed to establish that there is no material issue of fact, they are not entitled to partial summary judgment. Orders denying movants' motions for partial summary judgment will be issued. Footnotes
1. All Rule references are to the Tax Court Rules of Practice & Procedure. All section references are to the Internal Revenue Code as in effect for the taxable year in issue.↩
2. Movants in docket No. 18405-90 have submitted the "admissions" of Edwyn H. Schrier, the corporate records custodian of RRI, which state that Frederick S. Gnesin was elected president of RRI on February 4, 1985, and that Gnesin has never been replaced. Schrier did not state whether Trupin had ever been president of RRI. Respondent has submitted affidavits contradicting Schrier's assertions. On this record, Schrier's assertions have not eliminated all genuine issues of material fact.↩
3. Petitioners in docket No. 18405-90 object to respondent's reliance on the Form 872-O for General Data Associates on the ground that the form is inadmissible as evidence. Petitioners argue that the form has not been authenticated, but a document may be authenticated by "Comparison by the trier of fact or by expert witnesses with specimens which have been authenticated", Fed. R. Evid. 901(b)(3)↩. We believe that the trier of fact could reasonably conclude that Trupin's signature on the General Data Associates form was genuine by comparing it with the GIA and GIA3 forms. Petitioners also question whether Trupin's alleged title was added to the General Data Associates form after Trupin signed it, but that is clearly a question of fact that we should answer only after a trial and testimony. Petitioners also assert that disclosure of the form violates sec. 6103, which requires that "Returns and return information" be kept confidential, with certain exceptions. Petitioners argue that respondent will deny them discovery of the origin of the form based on sec. 6103, and that it would be more fair to exclude the form entirely. As respondent has not, so far as we know, denied petitioners discovery of any matter, this argument is not ripe for our consideration.
4. It is not entirely clear that New York law controls, but it may not matter. The law of the state of incorporation is controlling in deciding questions of actual authority, while the law of a state where a contract is made is controlling in deciding questions of apparent authority. Lee v. Jenkins Bros., 268 F.2d 357, 363-364 (2d Cir. 1959). RRI's state of incorporation does not appear on the record. It is possible that RRI is a Delaware corporation, like Paragon and Rothchild. In that event, Delaware law would control actual authority questions. Delaware law on the inherent authority of the president of a corporation appears to be in accord with New York. See Colt Lanes of Dover, Inc. v. Brunswick Corp., 281 A.2d 596, 601 (Del. 1971); Guyer v. Haveg Corp., 205 A.2d 176, 180 (Del. Super. Ct. 1964), affd. 211 A.2d 910↩ (Del. 1965). Thus, the same result probably would obtain.
5. Cambridge Research & Development Group v. Commissioner, 97 T.C. 287 (1991), relied on by petitioners in docket No. 20111-90, is not to the contrary. In that case, the issue was whether one of two general partners, both natural persons, was the TMP or was authorized by the partnership to sign the Form 872-O. We held that the signer of the Form 872-O was not the TMP, but was, by virtue of the partnership agreement, authorized in writing to extend the period of time for assessment under sec. 6229(b)(1)(B). In so holding, we wrote: Since Lawrence was not tax matters partner, the consent signed by him is effective only if he was authorized in writing by the partnership to enter such an agreement on behalf of all the partners. [Cambridge Research & Development Group v. Commissioner, supra at 294; emphasis added.] There was no evidence in that case that the TMP had authorized Lawrence to sign on his behalf. The word "only" may be taken to mean that under the facts of that case, the only remaining possibility was the one described in the quotation. In addition, the case is distinguishable because the TMP was a natural person who could act on his own behalf, while in this case the TMP is a corporation, which can act only through its authorized agents. ↩
6. Trupin also might have had apparent authority to sign, even if he was not the president. See Eversole v. Commissioner, 46 T.C. 56 (1966); Griffith v. Commissioner, T.C. Memo. 1988-445 at n.14 and accompanying text; Collision Plan Unlimited, Inc. v. Bankers Trust Co., 469 N.Y.S.2d 105↩ (App.Div. 1983).